**Lindsey LEMON, et al., Plaintiffs,**

**v.**

**DISTRICT OF COLUMBIA,
et al., Defendants.**

**Civil Action No. 95–2192.**

United States District Court,
District of Columbia.

March 27, 1996.

---

Charles Moran, Washington, DC, for plaintiffs.

Reva Brown, Office of the Corporation Counsel, Washington, DC, Beth Goodman, Feldesman, Tucker, Leifner, Fidell & Bank, Washington, DC, for Movants.

### MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on Defendants' Motion to Dismiss and on Plaintiffs' Reply to the Court's Order to Show Cause why they are not part of the class in *Petties v. District of Columbia*, Civil Action No. 95–0148(PLF), and why their claims should not be resolved as part of the *Petties* litigation. Plaintiffs oppose both the motion to dismiss and the inclusion of their claims in *Petties*. Defendants and the *Petties* plaintiffs, whom the Court has granted leave to intervene, urge the Court to deny plaintiffs' request that their lawsuit be treated as a separate class action and maintain that dismissal is warranted because plaintiffs have failed to exhaust their administrative remedies.[1]

Plaintiffs, who are children placed in public schools and their parents, seek to certify a class and request that the Court, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (1990), (1) declare that the District of Columbia Public Schools ("DCPS") is required immediately to implement certain hearing officer determinations and settlement agreements and to conduct triennial reevaluations of the students' educational needs, (2) enjoin the defendants to comply with the IDEA and related statutes and regulations, and (3) require the District of Columbia to report to this Court on a regular basis to guarantee compliance. The named plaintiffs seek this relief on behalf of a putative class which they define as:

> all children with disabilities who are entitled to be provided special education and/or related services by the DCPS and who satisfy, or who may in the future satisfy, each of the following criteria:
>
> a. the child has been the subject of (i) an order issued by an impartial hearing officer . . ., or (ii) an agreement or stipulation entered into with the DCPS . . . relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child;
>
> b. the child is eligible to have his/her special education needs provided in a public school setting; and
>
> c. the DCPS has failed to fully and timely comply with and implement (i) the terms specified in the order, agreement or stipulation, or (ii) the statutory conditions sufficient to ensure the provision of FAPE [free appropriate public education] in the least restrictive environment, consistent with said terms.

The named representatives of this putative class are eight public school students with disabilities for whom apparently no substantive administrative hearing has yet been held to challenge their respective placements. The administrative determinations submitted by plaintiffs with their papers deal almost exclusively with the issue of the defendants' failure to complete certain aspects of the special education process in a timely manner. These preliminary administrative determinations do not address the alleged substantive inadequacies in plaintiffs' placements, which have not yet been tested through administrative due process hearings. The plaintiffs have not alleged that they have exhausted

---

1. Alternatively, the *Petties* plaintiffs urge the Court to address plaintiffs' claims in a manner that does not conflict with the *Petties* litigation or deprive individual *Petties* class members of their rights, or exclude them, or any other students with disabilities, from obtaining any relief available to them that is granted to the class in this case.

their administrative remedies before bringing this action or that they fall within an exception to the exhaustion requirement. Plaintiffs' failure to exhaust administrative remedies is fatal to their claims for relief and, as a consequence, for class certification.[2]

■ As this Court previously has noted, the purpose of the Individuals with Disabilities Education Act is to assure that children with disabilities have available to them a free and appropriate public education that addresses their unique needs. *Petties v. District of Columbia*, 881 F.Supp. 63, 65 (D.D.C. 1995); *see* 20 U.S.C. § 1400 *et seq.* To assure that this goal is met, the IDEA directs the child's parents, teachers and other professionals to develop an Individualized Education Program ("IEP") for each special education student that sets forth the required instructions and services designed to meet the particular child's unique needs. 20 U.S.C. § 1401(a)(20). Once the IEP is developed, the school system must provide an appropriate placement that meets those needs and, if an appropriate public placement is unavailable, the school system must provide an appropriate private placement or make available educational-related services provided by private organizations to supplement a public placement. 20 U.S.C. § 1413(a)(4)(B); 34 C.F.R. §§ 300.348, 300.400–300.403, 104.33(c); *see Burlington Sch. Comm. v. Mass. Dept. of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985); *Knight v. District of Columbia*, 877 F.2d 1025, 1028 (D.C.Cir.1989); *Petties v. District of Columbia*, 897 F.Supp. 626, 628 (D.D.C.1995); *Wirta v. District of Columbia*, 859 F.Supp. 1, 5 (D.D.C.1994); *Work v. McKenzie*, 661 F.Supp. 225, 228 (D.D.C. 1987).

The statute further provides that once a placement has been made, agreed to or determined to be appropriate after an administrative hearing, a school system proposing to change the placement must provide written notice to the student's parents and an explanation of why the school system proposes to take the action. It may not change a student's placement without the parents' agreement or a determination in an administrative due process hearing that the change in placement is appropriate and permissible under the IDEA. 20 U.S.C. § 1415; 34 C.F.R. §§ 300.504, 300.505, 104.36.[3] Such substantive administrative proceedings are the usual and required course of action for students and parents who wish to challenge the adequacy of an IEP or placement. 20 U.S.C. §§ 1415(b), (e); 34 C.F.R. §§ 300.506–300.511; *see* Second Declaration of Beth Goodman ("Second Goodman Decl.") ¶¶ 8–11 (Jan. 23, 1996) (describing substantive due process hearings that generate a substantial record for review and that place on DCPS the burden of proving that it has met its obligations). 20 U.S.C. § 1415(e) explicitly provides that a party aggrieved by a hearing officer's final determination may bring an action in any state court of competent jurisdiction or in a United States District Court and that the court shall base its review on the entire administrative record as well as any additional evidence submitted by the parties. 20 U.S.C. § 1415(e)(2).

■ The requirement that parties exhaust administrative remedies is a jurisdictional prerequisite to any claim for judicial relief arising out of the IDEA. *Honig v. Doe*, 484 U.S. 305, 326–27, 108 S.Ct. 592, 605–606, 98 L.Ed.2d 686 (1988); *Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1303–04 (9th Cir.1992); *Cox v. Jenkins*, 878 F.2d

---

**2.** This is not to say that a United States District Court cannot require a hearing officer or other federal or District of Columbia official to perform his or her statutorily mandated duties or that a placement cannot be challenged once all administrative proceedings have been completed. The IDEA provides for judicial review of parties "aggrieved" by a determination made pursuant to a due process hearing, 20 U.S.C. § 1415(e)(2), and several courts have found that the failure of an educational authority to provide a suitable IEP and placement may even be cognizable under 42 U.S.C. § 1983 where section 1415(e)(2) is

unavailable for some reason. *See Robinson v. Pinderhughes*, 810 F.2d 1270, 1273 (4th Cir. 1987); *Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 148 (2d Cir.1983). There is no suggestion in this case, however, that the administrative process has run its course.

**3.** As the Court previously held, maintenance of the placement includes full payment for the program in which the student is placed. *Petties v. District of Columbia*, 881 F.Supp. at 66.

414, 418–19 (D.C.Cir.1989); *Hope v. Cortines,* 872 F.Supp. 14, 17 (E.D.N.Y.1995). In fashioning the statutory scheme that comprises the IDEA, Congress intended for courts to decide educational placement issues only upon review of an administrative record created by educational experts. *Cox v. Jenkins,* 878 F.2d at 418–419 (citing *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). Since the IDEA provides for the grievances of an individual child to be addressed in court only after an administrative determination has been made, and it appears that none of the named plaintiffs has participated in any substantive administrative proceeding, the Court declines plaintiffs' request to permit a parallel proceeding in this Court that would replicate or by-pass the administrative process before it has run its course. To do so would contravene the IDEA. *See* 20 U.S.C. §§ 1415(c), (e).

■ The Court finds that plaintiffs have failed to exhaust their administrative remedies in a variety of ways. According to plaintiffs' own papers, six of the eight named plaintiffs have either received appropriate placements or are in the process of having their placements evaluated and changed. Erick Evans' "educational needs are finally being met at his chosen public school placement." Declaration of Nancy Opalack ("Opalack Decl.") ¶ 10 (Jan. 16, 1996). Hosea Peterson's guardian "would prefer a placement closer to his home, but may accept the Prospect[/Goding School] placement if it does indeed provide the resources Hosea needs." Opalack Decl. ¶ 16. LeRoy Brown is currently at Ketchum; his proposed placement at Prospect has been referred "back to the Associate Superintendent for Special Education (Dr. Pinkney) for review as to the appropriateness of the placement, and [the principal at Prospect] is still awaiting the results of that review." Opalack Decl. ¶ 17. Paul Harris is on the waiting list for the Leary School and is receiving tutoring on an interim basis. Opalack Decl. ¶ 18. Lindsey Lemon is at Hines Junior High School and is awaiting the results of occupational and physical therapy evaluations which will be incorporated into his IEP. Declaration of Christine Anninos ("Anninos Decl.") ¶ 9 (Jan. 16, 1996).[4] George Johnson has been offered placement at the Buena Vista School. Opalack Decl. ¶ 14; Affidavit of James Brown ("Brown Affid.") ¶ 4(c) (Dec. 18, 1995). He also has an interview scheduled with the Foundation School which Ms. Opalack considers to be a superior placement for George. Opalack Decl. ¶ 14.

For each of these six students, plaintiffs themselves describe DCPS as engaged in the process of evaluating their needs as contemplated by the IDEA. Indeed, Ms. Opalack states in her declaration that "[s]ince the filing of the complaint, DCPS has made assiduous efforts to comply with hearing determinations regarding the named plaintiffs." Opalack Decl. ¶ 22.

■ The allegations regarding the two remaining named plaintiffs are somewhat different. Plaintiffs allege that Cynthia Chandler and Andre Pate have been placed in the appropriate schools as required by their IEPs but that even in those placements they are not in fact receiving the special education to which they are entitled. Cynthia has been placed at the Chamberlain Senior High School and is receiving vocational training but allegedly does not receive the number of hours of special education classes to which she is entitled under her IEP. Opalack Decl. ¶ 11. Andre has been placed at Spingarn but allegedly does not receive the two weekly sessions of psychological services and weekly parent counseling that his IEP requires. Anninos Decl. ¶ 15.

If plaintiffs had exhausted their administrative remedies and provided evidence thereof to the Court, the Court would be disturbed by allegations that DCPS does not implement the terms of approved and final IEPs for public school students. Plaintiffs have offered no evidence, however, that they have challenged these placements or the ser-

---

4. It is unclear from the parties' papers whether Lindsey has a final IEP or not. *Compare* Pls.' Appendix C (reflecting the existence of an IEP) *with* Anninos Decl. ¶ 8 (referring to Lindsey's "interim IEP"). Plaintiffs also allege that, although further evaluation is taking place, Lindsey is not now receiving the services specified on his interim IEP and is failing school as a result. Anninos Decl. ¶ 10.

vices provided through a substantive administrative proceeding. Complaint ¶¶ 82–86, 111–16; *see* Second Goodman Decl. ¶¶ 8–11. Instead, plaintiffs rely on the assertions in the declarations of Ms. Anninos and Ms. Opalack that, in their opinions, the placements of these two students are inadequate. The IDEA, however, requires that parents, teachers, educational experts and students together determine the appropriateness of each IEP and placement, 20 U.S.C. § 1401(a)(20), and that the Court review the entire administrative process only after it has been concluded. 20 U.S.C. §§ 1415(b)(2), (e)(2); *see Cox v. Jenkins,* 878 F.2d at 421 (rejecting attempt to avoid exhaustion requirement by styling the case as an action to "enforce" the hearing officer's decision). Without a complete administrative record for review, the Court is not equipped to pass judgment on the appropriateness of individual plaintiffs' placements, much less the claims of an entire class of students that the District of Columbia is not serving students with disabilities in its public schools.

Accordingly, the Court concludes that this action should be DISMISSED for failure to exhaust administrative remedies.

SO ORDERED.