MRS. M, on her own behalf and on behalf of I. as her mother, and the Puerto Rican Coalition in Bridgeport, Plaintiffs,

v.

BRIDGEPORT BOARD OF EDUCATION and James A. Connelly, Superintendent of Bridgeport Public Schools, Defendants.

No. Civ.A.3:98CV1894CFD.

United States District Court, D. Connecticut.

March 29, 2000.

Douglas M. Crockett, Connecticut Legal Services, Willimantic CT, Catherine L. Williams, Connecticut Legal Services, Bridgeport, CT, Rosemary Q. Barry, Southport, CT, for plaintiffs.

Susan C. Freedman, Martha Watts Prestley, Shipman & Goodwin, Hartford, CT, Arthur C. Laske III, Tumbull, CT, for defendants.

### MEMORANDUM OPINION AND ORDER

DRONEY, District Judge.

The plaintiffs, Mrs. M., on her own and on behalf of her daughter I.,[1] and the Puerto Rican Coalition in Bridgeport ("PRC") bring this action against the Bridgeport Board of Education ("BBE") and James Connelly, the Superintendent of the Bridgeport Public Schools, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title 2 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. The complaint also alleges that the defendants have denied the plaintiffs their right to equal protection under the Fourteenth Amendment

to the United States Constitution, in violation of 42 U.S.C. § 1983.

In addition to their individual claims, the plaintiffs have styled their complaint as a class action brought on behalf of the minority children in the Bridgeport school system who allegedly have been misidentified by the BBE as mentally retarded. Pending before the Court is the defendants' partial motion to dismiss the plaintiffs' amended complaint for lack of subject matter jurisdiction [Document # 15] on the basis that all of the purported plaintiffs, except for Mrs. M. and I., have failed to exhaust their administrative remedies. The defendants also argue that the PRC lacks standing to bring this action. For the reasons set forth below, the defendants' motion to dismiss is GRANTED.

### I. BACKGROUND

The initial complaint filed in this action was brought by Mrs. M., on her own and on behalf of her daughter I., as an appeal of an August 11, 1998 decision issued by a special education hearing officer appointed by Connecticut's State Department of Education ("SDE"). The initial complaint alleged that the hearing officer had improperly rejected Mrs. M.'s claim that I. had been misidentified by the BBE as mentally retarded and should have been identified as "Language Impaired Learning Disabled." That complaint also alleged that the officer had improperly denied Mrs. M.'s request for an out-of-district placement for compensatory education rather than placement of I. in a self-contained class for children who are identified as Educable Mentally Retarded. Shortly thereafter, Mrs. M. amended her complaint, as of right, to include the PRC[2] and the purported class plaintiffs.

---

1. The plaintiffs were permitted to bring this action in the fictitious names of "Mrs. M." and "I."

2. The PRC is an unincorporated association of individuals, including parents of children in Bridgeport, formed for the purpose of "protecting and promoting the civil, democratic and human rights of Puerto Ricans and Latinos." Amended Complaint ¶ 7.

The plaintiffs claim that the misidentification and misplacement of I. and others similarly situated violates the IDEA, the Rehabilitation Act, the ADA, and the equal protection clause of the Fourteenth Amendment to the United States Constitution. In support of their claims, the plaintiffs allege that the BBE engages in a pattern and practice of over-identifying minority school children as mentally retarded, at a rate of more than three times the state-wide average for such identification, while simultaneously failing to identify correctly the disabilities of such children and provide them with a proper education. *See* Amended Complaint ¶¶ 3, 75, 77. The plaintiffs further contend that Connecticut Legal Services, Inc. ("CLS") has represented numerous Latino and African–American minority school children who were misidentified by the BBE, but who have now been correctly identified through the efforts of CLS.[3] *See* Amended Complaint ¶ 76.

In support of their motion to dismiss, the defendants argue that, other than Mrs. M. and I., all of the purported class plaintiffs described by the amended complaint have failed to exhaust their administrative remedies before bringing their claims to federal court. The defendants have provided an affidavit from the Interim Director of Special Education for the Bridgeport Public Schools, which states that from August 1995 through November 6, 1998 (the date of the affidavit), there were no due process hearing requests filed with the SDE alleging that the BBE had inappropriately identified any student as mentally retarded.[4]

In response, the plaintiffs do not contest that they have not sought relief through the administrative remedies provided by the SDE. Instead, they argue that, because of the nature of their claims, they need not exhaust their administrative remedies.

## II. STANDARD

Because federal judicial review is normally not available in an IDEA action until all administrative proceedings are completed, the issue of whether the plaintiffs in this case are required to exhaust their administrative remedies as a prerequisite to bringing this action is a matter that concerns this court's subject matter jurisdiction. *See Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

When considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055 (2d Cir.1993) (quoting *Goldman v. Gallant Secs. Inc.,* 878 F.2d 71, 73 (2d Cir.1989)), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). In doing so, the allegations of the complaint are construed in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Connell v. Signoracci,* 153 F.3d 74

---

**3.** The plaintiffs do not include these children in the class.

**4.** The defendants' counsel also made Freedom of Information ("FOI") requests of the SDE, seeking "a copy of every Due Process Hearing Request filed against the Bridgeport Board of Education from August 1995 through the present date" and "a copy of all records that reflect complaints received by the State Department of Education in any form, aside from requests for Due Process Hearings, concerning the Bridgeport Board of Education

from August 1995 through [November 1998]." According to the defendants, the response from the SDE to the FOI requests indicates that, of the twenty requests for due process hearings and the six complaints filed against the BBE during the described time period, only one due process hearing request alleged the BBE had misidentified a child as mentally retarded and none of the complaints alleged that the BBE had misidentified any student or students as mentally retarded.

(2d Cir.1998); *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). A district court, however, need not confine its evaluation of subject matter jurisdiction to the face of the pleadings and may consider affidavits and other evidence submitted by the parties. *See Land v. Dollar,* 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976), *Matos v. United States Dep't of Hous. & Urban Dev.,* 995 F.Supp. 48, 49 (D.Conn.1997). Once the question of subject matter jurisdiction has been raised, the burden of establishing subject matter jurisdiction rests on the party asserting jurisdiction. *See Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

## III. DISCUSSION

### A. The IDEA Framework

The primary purpose of the IDEA is to assure that all children with disabilities receive a "free appropriate public education" which emphasizes special education and related services designed to meet their unique needs and to assure that the rights of children with disabilities and their parents or guardians are protected. *See* 20 U.S.C. § 1400(c); *Honig,* 484 U.S. at 309, 108 S.Ct. 592. Through the IDEA, Congress has established a comprehensive statutory framework that is designed to assist states financially in providing disabled children with a free appropriate public education. *See* 20 U.S.C. § 1400(c).

To ensure that the objectives of Congress are implemented, the IDEA also imposes certain requirements that must be met by states receiving federal financial assistance. *See* 20 U.S.C. § 1415. The IDEA encourages parental involvement in their child's educational program and allows parents to obtain administrative and judicial review of decisions that they believe are inappropriate. *See* 20 U.S.C. § 1415(b), (c), (e); *Honig,* 484 U.S. at 311–12, 108 S.Ct. 592. Parents are entitled to an impartial due process hearing conducted by the local or state educational agency, as determined by state law,[5] at which they can challenge any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a "free appropriate public education." *See* 20 U.S.C. § 1415(b)(1), (2); *Honig,* 484 U.S. at 312, 108 S.Ct. 592.

Connecticut has enacted a series of statutes that set forth the rights and obligations, both procedural and substantive, of parents, school boards, and other state and local agencies that are involved in the education of disabled children. *See* Conn. Gen.Stat. §§ 10–76a *et seq.* These statutes are intended to comply with the IDEA and ensure appropriate programs for disabled children. They provide that parents who are not satisfied with the educational program provided for their child first must raise their concerns at a meeting of the child's Planning and Placement Team ("PPT"). *See* Conn.Gen.Stat. § 10–76h(a)(1).[6] If the child's parents are not satisfied with the educational program following the PPT meeting, they may request a hearing before the local board of education. *See id.* If the local board then decides not to modify an identification, evaluation, educational placement, or program, the parents may request an "impartial due process hearing" before a hearing officer appointed by the SDE.[7] *See* Conn.

---

5. In Connecticut, the SDE conducts due process hearings. *See* Conn.Gen.Stat. § 10–76h(c).

6. The PPT consists of the child's parents and representatives from the teaching, administrative, and pupil services staffs. The PPT is responsible for evaluating and planning services for the child and meets at least annually to develop and revise the child's individualized educational program.

7. In lieu of proceeding directly to a hearing, the parties may agree in writing to mediation. The parents, however, still retain the ability to pursue a hearing if the mediation is unsuccessful. *See* Conn.Gen.Stat. 10–76h(f).

Gen.Stat. § 10–76h(a)(3), (c)(1). Hearing officers have the authority to confirm, modify, or reject the prior decision. *See* Conn.Gen.Stat. § 10–76h(d)(1). Parents then have a right to appeal an adverse decision of the hearing officer to state or federal court. *See* 20 U.S.C. § 1415(e).

In addition to the procedural safeguards established in 20 U.S.C. § 1415, the Education Division General Administrative Regulations ("EDGAR"), 34 C.F.R. §§ 76.1–76.902, create an administrative mechanism to ensure that a state complies with the provisions of the IDEA. Specifically, 34 C.F.R. § 76.780 requires a state to adopt a written complaint resolution procedure ("CRP") for receiving and resolving complaints that the state or a local school board is violating the IDEA or its regulations. In Connecticut, the SDE Bureau of Special Education and Pupil Services has established a CRP in compliance with EDGAR.

*B. Exhaustion*

■ "A basic principle of the IDEA is that a plaintiff must first exhaust the state administrative remedies provided under the Act, including the administrative appeals provisions, before bringing an action in federal court to challenge the evaluation and placement of a child." *Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981); *see also* 20 U.S.C. § 1415(e)(2); *Heldman v. Sobol,* 962 F.2d 148, 158 (2d Cir.1992); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987). In this case, with the exception of Mrs. M. and I., the purported class plaintiffs have failed to exhaust their administrative remedies. Absent an applicable exception to the exhaustion requirement, all of the purported plaintiffs, other than Mrs. M. and I., are not yet entitled to federal judicial relief for their claims.[8]

■ The IDEA exhaustion requirement, however, is not an inflexible rule. *See Mrs. W.,* 832 F.2d at 756. "The dispute over exhaustion reduces to one issue: whether there is a meaningful administrative enforcement mechanism for the vindication of personal rights.... It is a well-established principle of administrative law that exhaustion is not required if the only available administrative remedy is plainly inadequate." *Riley,* 668 F.2d at 641 (quoting *Patton v. Dumpson,* 498 F.Supp. 933, 940 (S.D.N.Y.1980)). In *Mrs. W.,* the Second Circuit summarized the recognized exceptions to exhaustion as follows: exhaustion is not required when "(1) it would be futile to use the due process procedures [required by the IDEA] ...; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; [or] (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." *Mrs. W.,* 832 F.2d at 756. Therefore, in this case, the plaintiffs other than Mrs. M. and I. may prosecute their claims only if they can demonstrate that they fall within one of the recognized exceptions to the exhaustion requirement.

■ In determining whether exceptions to the exhaustion requirement are met in a particular case, a court should examine whether pursuit of administrative remedies under the facts presented in the case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme. *See Bowen v. City of New York,* 476 U.S. 467, 484, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1303 (9th Cir.1992). The Second Circuit has explained the congression-

---

**8.** This is true for the plaintiffs' IDEA claims as well as their Rehabilitation Act, ADA, and equal protection claims. "[W]hen parents choose to file suit under another law that protects the rights of handicapped children— and the suit could have been filed under the

... [IDEA]—they are first required to exhaust the [IDEA]'s remedies to the same extent as if the suit had been filed originally under the [IDEA]'s provisions." *Mrs. W.,* 832 F.2d at 756; *see also* 20 U.S.C. § 1415(f).

al intent behind the IDEA's·administrative framework as follows:

> Rather than detailing the precise substantive rights applicable to all affected children, Congress opted for individually tailored programs-programs crafted by parents and educators working together· to determine what is appropriate for each child. Congress recognized that such an unconventional approach would require extensive procedural safeguards to protect the educational rights of children with disabling conditions.

*Heldman,* 962 F.2d at 150.

Thus, Congress's preference for individually tailored programs under the IDEA framework must be considered when examining whether the plaintiffs' claims fall within one of the exceptions to the exhaustion requirement.

### 1. Exceptions to the Exhaustion Requirement

The plaintiffs in this case assert that their claims should be excused from the exhaustion requirement because they fall within the second and third exceptions to the exhaustion requirement identified in *Mrs. W.* The defendants respond that the *Mrs. W.* exceptions do not apply to the plaintiffs' claims. Each of these exceptions and its applicability to this case will be discussed below.

#### a. *"Policy or Practice of General Applicability Contrary to Law"* ·

Under the second exception set forth in *Mrs. W.,* exhaustion is not a prerequisite to filing suit under the IDEA when an agency has adopted a policy or pursued a practice of general applicability that is contrary to law. *See Mrs. W.,* 832 F.2d at 756. "The rationale behind this exception is that while the administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or alter existing ones." *King v. Pine Plains Cent. Sch. Dist.,* 918 F.Supp. 772, 781 (S.D.N.Y.1996).

Exhaustion thus is not required "where the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process," because the hearing officers are powerless to remedy an illegal policy or practice of general applicability. *J.G. v. Board of. Educ. of Rochester City Sch. Dist.,* 830 F.2d 444, 447 (2d Cir.1987).

*Mrs. W.* was an action brought by parents of handicapped children and CLS against the Connecticut State Board of Education for violations of the IDEA. *See Mrs. W.,* 832 F.2d at 757. The plaintiffs claimed that "the [Bridgeport] school system had violated the IDEA by failing to provide an adequate psychologist staff and to conduct triennial evaluations of handicapped children." *Id.* at 752. They further claimed that "the State Board did not provide them with an opportunity to raise their system-wide complaints [against the Bridgeport School Board] in a due process hearing pursuant to 20 U.S.C. § 1415(b)(2)." *Id.* The district court dismissed the case on the basis, among others, that exhaustion was required. In reversing on the basis that exhaustion was not required, however, the Second Circuit reasoned that the plaintiffs' complaint alleged a "pattern and practice of systematic ... violations unable to be addressed at the due process hearings provided in Connecticut." *Id.* at 757. Specifically, the Second Circuit reasoned that the plaintiffs' complaint sufficiently alleged that the Bridgeport School Board· had adopted a policy contrary to law and that the due process hearing officers provided by Connecticut lacked the authority to effectuate system-wide relief. *See id.*

■ Unlike the situation in *Mrs. W.,* however, this case does not involve a situation where the challenged policy or practice of general applicability is incapable of being remedied through the available administrative process. Although the plaintiffs in this case have alleged that the BBE engages in a pattern and practice of ille-

gally over-identifying minority school children as mentally retarded, such a pattern or practice is subject to review by the SDE hearing officers on a case-by-case basis. More importantly, if the hearing officers detect an improper identification method, they can reject it, which would impact favorably on other children. *See infra* Part III.B.2.

In light of Congress's intent in enacting the statutory and regulatory scheme of the IDEA, the plaintiffs' claims challenging the identification of certain children as mentally retarded are also the type of claims that should be addressed in a due process hearing before the SDE. Assuming that there are eligibility criteria and methodology employed by the BBE in identifying children as mentally retarded which can be classified as a policy or practice of general applicability,[9] such criteria or methodology "are classic examples of the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record." *Hoeft,* 967 F.2d at 1305.

A similar approach was endorsed in *Riley v. Ambach,* 668 F.2d 635 (2d Cir.1981). In *Riley,* eighteen learning disabled children and their parents challenged the New York State standard for determining when a child was considered learning disabled and eligible for special education services. After the district court decided that administrative exhaustion was not required and conducted a trial on the merits, it held that the defendants' actions were inconsistent with the IDEA. *See id.* at 636. On appeal, however, the Second Circuit reversed the district court on the ground that the plaintiffs had failed to exhaust their administrative remedies. *See id.* at 639. The Second Circuit reasoned that the issues raised by the plaintiffs were difficult and technical, that the state experts should

first have their say, and that "[i]f that say does not resolve the issue, the record created by the application of their expertise to those problems will certainly help the federal court resolve the issue in a more informed manner." *Id.* at 640; *see also Hoeft,* 967 F.2d at 1307 ("A dispute over such eligibility criteria policies concerns, in essence, questions about the identification and evaluation of individual disabled children, precisely the kind of dispute to which the IDEA's administrative scheme is addressed. *See* 20 U.S.C. § 1415(b)(1)(E). Exhaustion as to these policies is therefore required.").

Since the Second Circuit's *Riley* decision, other courts have required exhaustion of administrative remedies in similar factual settings. Despite claims of a policy or practice of general applicability that is contrary to law, these courts have required exhaustion in circumstances where it would serve the underlying purposes of the IDEA's administrative scheme and assist federal courts by establishing a factual record reflecting agency expertise. In *Association for Community Living in Colorado v. Romer,* 992 F.2d 1040, 1044 (10th Cir.1993), for example, the Tenth Circuit held that. a "plaintiff does not necessarily fall within [an exhaustion] exception by challenging a policy of general applicability rather than an [independent educational plan] formulated pursuant to that policy. The plaintiffs must still show that the policy is contrary to law and that the underlying purposes of exhaustion would not be served." *Id.* at 1044 (citation omitted). "[E]xhaustion may be unnecessary if the alleged violations raise only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important." *Id.; see also, e.g., Hoeft,* 967 F.2d at 1306; *Lemon v. District of Columbia,* 920 F.Supp. 8, 12

---

**9.** The complaint does not specifically allege that certain eligibility criteria or methodologies are used by the BBE in determining a child's identification. However, reading the complaint in the manner most favorable to the plaintiffs, the complaint can be read to allege impliedly that the BBE does use improper eligibility criteria or methodology in identifying children as mentally retarded.

(D.D.C.1996) ("Without a complete administrative record for review, the Court is not equipped to pass judgment on the appropriateness of … claims of an entire class of students that the District of Columbia is not serving students with disabilities in its public schools."); *Learning Disabilities Ass'n of Maryland, Inc. v. Board of Educ. of Baltimore County*, 837 F.Supp. 717, 724 (D.Md.1993) (same).

The conclusion that exhaustion is not excused under this prong of the *Mrs. W.* elements does not mean it could never apply. But, as in this case, an examination of whether the BBE is improperly identifying children as mentally retarded would most likely require the Court to undertake an evaluation of each child—or at least a number of children—for which the prior administrative record would be critical. Effective judicial review needs the administrative process to explore fully the technical educational issues and develop a complete factual record for each child. This approach also would promote judicial efficiency by giving the BBE and the SDE the first opportunity to correct shortcomings or errors made by the BBE when identifying a particular child. *See McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992).[10] The situation here is different from *Mrs. W.*, where the alleged systematic violations—inadequate staffing and failure to conduct evaluations—could not be remedied by the due process hearing officers and were of a type that did not require an administrative record for the district court to address the issues in an informed way.

### b. Inadequacy of Relief

The plaintiffs also argue that they should be excused from the exhaustion requirement under the third exception set forth in *Mrs. W.*, because the administrative procedures established by Conn.Gen. Stat. § 10–76h are inadequate to address the issues raised by their complaint. *See Mrs. W.*, 832 F.2d at 756. However, the plaintiffs allege in their complaint that other children in the Bridgeport school system who have allegedly been misidentified have subsequently been correctly identified, following representation by CLS. *See* Amended Complaint ¶ 76. The plaintiffs also state that "issues such as the misidentification of minority school children as retarded can and have been resolved through PPT meetings." Mem.Opp. to Mot. to Dismiss at 3–4. Connecticut law further provides that the hearing officers appointed by the SDE are specifically empowered with "the authority to confirm, modify, or reject" the identification of a child made by a local board of education. Conn.Gen.Stat. § 10–76h(d)(1). In addition, as with the prong of *Mrs. W.* just previously addressed, the decisions of the due process officers could very well impact other children as well. For example, if, in a particular case, a method was detected which over-identified children as mentally retarded, the hearing officer could decide that it was not appropriate or justified, which would impact other children. Therefore, the plaintiffs' argument that the administrative remedies available to them in this case are inadequate also fails to excuse administrative exhaustion.[11]

---

**10.** In support of their claim that minority children are over-identified as mentally retarded by the BBE, at a higher rate than other cities and towns in Connecticut, the plaintiffs have presented evidence of special education disability rates in Connecticut for the 1996–97 school year. The evidence sets forth various disability rates for each school district in the state, and indicates that the rate of mental retardation in Bridgeport is approx-

imately three times higher than in other districts.

**11.** To the extent that the plaintiffs also contend, in their sur-reply brief, that the "futility" exception set forth in *Mrs. W.* applies to this case, the Court concludes that the plaintiffs are not excused from the requirement of administrative exhaustion on that basis. In support of their argument that administrative exhaustion would be futile, the plaintiffs in this case appear to raise the same arguments

### c. Substantive v. Structural Claims

Finally, as to the Court's conclusion that neither the second or third exception set forth under *Mrs. W.* excuses administrative exhaustion in this case, the Court determines that the plaintiffs' complaint in essence presents a challenge to the identification decisions made by the BBE with respect to certain children and not to the actual framework under which the identification decisions were made. In other words, their challenge really is to the *substantive determinations* reached by the BBE concerning certain children, not to the *structure* of the system under which the identification was made. *See also, e.g., Doe v. Arizona Dep't of Educ.,* 111 F.3d 678, 682–83 (9th Cir.1997).[12] The question of whether a child has been properly identified by the BBE is the type of claim which was intended by Congress to be addressed on a case-by-case basis, with the needs of the particular child determined by the child's parents and educators. *See Heldman,* 962 F.2d at 150. The plaintiffs, however, challenge multiple identification decisions by bringing one lawsuit despite the unique circumstances and needs of each child and without first attempting to have the identification issues explored by each child's parents, educators, and the SDE hearing officers. In that sense, the plaintiffs' approach would ignore Congress's intent to craft the IDEA in such a way as to promote individual educational programs tailored to a specific child's needs. This distinction is important to the analysis under both relevant exceptions to exhaustion set forth in *Mrs. W.*

### 2. Other Arguments

■ The class plaintiffs in this case also argue that they should be excused from exhausting their claims because the named plaintiff, Mrs. M., has exhausted her administrative remedies. They argue that to require exhaustion of all the class members would effectively foreclose plaintiffs from pursuing class actions under the IDEA. The plaintiffs rely on the decision in *Mrs. W.* to support this argument.

The Second Circuit held in *Mrs. W.* that the class plaintiffs[13] were excused from the IDEA exhaustion requirement because the administrative review process available in Connecticut at that time could not afford the plaintiffs the relief they were seeking. *See* 832 F.2d at 757. Specifical-

---

that they have raised concerning the other two exhaustion exceptions set forth in *Mrs. W.:* the due process hearing officers are incapable of remedying the allegedly illegal policy or practice, and any relief they can provide would be inadequate. However, as indicated, the Court concludes that the decisions of a hearing officer as to a particular child could very well impact other children and thus could provide the relief that the plaintiffs seek. *See also infra* pp. 134–35 (discussing the plaintiffs' futility argument as it relates to bringing a class action).

12. In *Doe,* the Third Circuit recognized a similar distinction between substantive and structural determinations. That decision held that exhaustion was required before a plaintiff could bring an action challenging the defendant's failure to provide educational services to juveniles held in the Pima County Jail. *See id.* at 682–83. In reaching this conclusion, the court distinguished between "systemic" or "structural" claims, which do not require exhaustion of administrative remedies, and "non-systemic claims," which do require ex-

haustion. *See id.* A "systemic" claim, the Court reasoned,

> implicates the integrity of reliability of the IDEA's dispute resolution procedures themselves, or requires restructuring of the education system itself in order to comply with the dictates of the Act; [a non-systemic claim] involves only a substantive claim having to do with limited components of a[n educational] program, and if the administrative process is capable of correcting the problem.

*Id.* at 682. Furthermore, the court indicated that only a claim challenging a policy that cannot be changed absent structural relief that only a court can order relieves a plaintiff of the requirement of exhaustion. *See id.* at 683.

13. It appears that the plaintiff class had not been certified at the time of the Second Circuit's decision in *Mrs. W.,* but it also appears that the decision excused exhaustion for the members of the putative class. *See Mrs W.,* 832 F.2d at 752.

ly, the plaintiffs claimed, in part, that the school system had violated the IDEA by failing to provide both an adequate psychologist staff and by failing to conduct triennial evaluations of handicapped children. See id. at 752. However, the only administrative remedy available to parents in Connecticut at that time was a due process hearing, which was limited to addressing disputes over a particular child's individual education program and not the structure of the system under which such substantive decisions were made. The relief which could have been ordered in individual due process hearings could not have remedied the system-wide defects. In addition, there was no effective CRP process in place in Connecticut that could address or resolve allegations of systematic IDEA violations by state or local agencies. Accordingly, there was no adequate administrative remedy for the plaintiffs to pursue relief through this avenue. For this reason, exhaustion was not required.

As discussed above, the nature of the plaintiffs' claims in this case are different from the systematic violations alleged in Mrs. W. The plaintiffs' claims here essentially challenge the determinations by the BBE of each child's abilities and educational status, not the procedures or framework for assessment. While the plaintiffs in Mrs. W. had no way to challenge the structure of the existing administrative scheme in place at the time, each plaintiff in this case has a due process hearing available to them that is specifically designed to resolve disputes over a child's identification and is also capable of addressing this type of complaint.

There may be circumstances in which the exhaustion of administrative remedies by representative claimants may be suffi-

cient to serve the purposes of the exhaustion requirement and properly frame the issues for judicial review, or where the number of similar claims would overwhelm the due process hearing procedures thus preventing a resolution of claims, or where a truly systematic claim could be brought by a class, but this case does not present such circumstances. See Association for Community Living in Colorado, 992 F.2d at 1045. Permitting the plaintiffs in this case to by-pass the administrative process now in place in Connecticut would not further its purposes, nor would it properly frame the issues in this case for judicial review. Rather, as indicated, the issues raised in this case require a detailed case-by-case analysis that is more suited at this stage of litigation to the administrative process than the federal courts.

Finally, the plaintiffs argue that (1) it would not be possible for all of the class plaintiffs to exhaust their administrative remedies because to do so would be impractical, and (2) it would have the effect of depriving parents and their disabled children from bringing a class action under the IDEA. There is, however, nothing in the record to indicate that any of the purported class plaintiffs have been prevented from administratively challenging an identification made by the BBE. Nor is this case like Jose P. v. Ambach, 669 F.2d 865, 869–70 (2d Cir.1982), in which there was evidence presented that the plaintiffs would not be able to have their concerns addressed through the administrative process due to the defendants' inability to process expeditiously thousands of administrative claims and appeals.[14] Moreover, requiring the plaintiffs to exhaust their administrative remedies, or to establish in-

---

14. Although the plaintiffs have argued in their opposition to the motion to dismiss that individual administrative hearings would "not be feasible" due to the need for school system-wide discovery, the plaintiffs have not demonstrated that the information which would show procedures or techniques that misidentify children would not be obtainable either in the due process hearing or, in this case, if

brought only on behalf of Mrs. M. and I. To the extent that the plaintiffs seek to supplement the record on this point, they would be permitted to do so if they showed a "solid justification." E.S. v. Independent Sch. Dist. No. 196, Rosemount Apple Valley Eagan, 135 F.3d 566, 569 (8th Cir.1998); see also Independent Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 560 (8th Cir.1996).

dividually that they should be excused from the exhaustion requirement, is not a bar to seeking relief on a class basis under the IDEA once exhaustion has occurred. *See, e.g., Tonya K. v. Chicago Bd. of Educ.,* 551 F.Supp. 1107 (N.D.Ill.1982) (certified class consisted of sufficiently numerous plaintiffs who had exhausted their administrative remedies).

Simply by styling a case as a putative class action should not excuse compliance with the required exhaustion of administrative procedures under the IDEA. To allow such a practice would eviscerate the procedural framework intended by Congress when it passed the IDEA, and would not allow for the hearing officers from the SDE to evaluate each child's needs. *See Hoeft,* 967 F.2d at 1303 ("The IDEA's exhaustion requirement also recognizes the traditionally strong state and local interest in education, as reflected in the statute's emphasis on state and local responsibility."); *cf. Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 873 F.2d 933, 935 (6th Cir.1989) ("States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the [IDEA]. Federal courts—generalists with no experience in the educational needs of handicapped students—are given the benefit of expert fact finding by a state agency devoted to that very purpose.").

## IV. CONCLUSION

For the foregoing reasons, the defendants' partial motion to dismiss [Document # 15] the claims brought by the PRC and the class plaintiffs is GRANTED.[15] Only the claims brought by Mrs. M., on her own and on behalf of her daughter I., shall proceed in this matter.

In light of this ruling, the plaintiffs' motion for class certification [Document # 26], the plaintiffs' motion for leave to file

a second amended complaint [Document # 45], and the defendants' motion for a protective order and stay of all discovery [Documents # 37–1, 37–2] are DENIED AS MOOT. The plaintiffs' motion to amend the scheduling order is GRANTED with the following modification. The parties shall submit a proposed scheduling order by *April 30, 2000,* for completing discovery and filing dispositive motions.

---

15. To the extent that the defendants assert other bases for dismissal, including the PRC's standing to bring this action, the Court need not consider them in light of the ruling concerning exhaustion of administrative remedies.