22-939-cv
*Z.Q., et al. v. N.Y.C. Dep't Educ., et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of February, two thousand twenty-three.

PRESENT:
> DENNIS JACOBS,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.

_____

Z.Q., by his parent, G.J., G.J., individually and on behalf of Z.Q., J.H., by his parent, Y.H., Y.H., individually and on behalf of J.H., J.A., by his parent, D.S., D.S., individually and on behalf of J.A., M.S., by his parent, R.H., R.H., individually and on behalf of M.S., D.V., by his guardian, V.L., V.L., individually and on behalf on D.V., J.W., by his parent, A.W., A.W., individually and on behalf of J.W., D.M., by his parent, E.L., E.L., individually and on behalf of D.M., C.B., by his parent, C.B.2, C.B.2, individually and on behalf of C.B., on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

v.                                                     22-939-cv

New York City Department of Education, New York City Board of Education, Richard Carranza, in his official capacity as Chancellor of the New York City School District, New York State Education

Department, New York State Board of Regents, Betty A. Rosa, in her official capacity as Interim Commissioner of Education and President of the University of the State of New York,

*Defendants-Appellees*.

FOR PLAINTIFFS-APPELLANTS:

JOSHUA A. KIPNEES (George A. LoBiondo & George Carotenuto, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, NY Rebecca C. Shore (on *the brief)*, Advocates for Children of New York, New York, NY

FOR DEFENDANTS-APPELLEES NEW YORK CITY DEPARTMENT OF EDUCATION, NEW YORK CITY BOARD OF EDUCATION, RICHARD CARRANZA, CHANCELLOR OF THE NEW YORK CITY SCHOOL DISTRICT:

D. ALAN ROSINUS, JR., Assistant Corporation Counsel, (Richard Dearing & Devin Slack, *on the brief*), *for* Sylvia O. Hinds-Radix, Corporation Counsel of the City of York, New York, NY

FOR DEFENDANTS-APPELLEES NEW YORK STATE EDUCATION DEPARTMENT, NEW YORK STATE BOARD OF REGENTS, BETTY A. ROSA, INTERIM COMMISSIONER OF EDUCATION AND PRESIDENT OF THE UNIVERSITY OF THE STATE OF NEW YORK:

DANIEL S. MAGY, Assistant Solicitor General, (Matthew W. Grieco, Senior Assistant Solicitor General, Barbara D Underwood, Solicitor General, *on the brief*), *for* Letitia James, Attorney General, State of New York York, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Carter, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the action is **REMANDED** for further proceedings consistent with this order.

Plaintiffs-appellants appeal from a judgment of the district court dismissing their claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; 42 U.S.C. § 1983 ("Section 1983"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

the Equal Educational Opportunities Act ("EEOA"), 20 U.S.C. §§ 1703, 1706; and New York State Education Law § 4002, *et seq.*, and the regulations promulgated thereunder, against the New York City Department of Education ("NYC DOE"), New York City Board of Education, and NYC DOE Chancellor Richard Carranza (collectively, the "City Defendants"), as well as the New York State Education Department, New York State Board of Regents, and Interim Commissioner of Education for the State of New York, Betty A. Rosa (collectively, the "State Defendants").[1]

Plaintiffs—students with disabilities and their parents—brought this putative class action alleging that the City Defendants and State Defendants failed to provide a free and appropriate public education ("FAPE") to thousands of students with disabilities in New York City during the period of remote learning caused by the COVID-19 pandemic. The district court dismissed plaintiffs' federal claims for failure to exhaust available administrative remedies because they did not seek compensatory services through NYC DOE's complaint resolution process before filing this action. The district court then declined to exercise supplemental jurisdiction over the state claim.

On appeal, plaintiffs do not dispute that they failed to exhaust their administrative remedies but instead argue that it would have been futile to do so because: (1) defendants' failure to implement students' individualized education programs ("IEP") during the pandemic was systemic; and (2) the administrative hearing process cannot award the particular relief that plaintiffs seek—that is, the appointment of a special master to oversee an alternative "streamlined, non-adversarial process for obtaining compensatory services that is independent of due process

---

[1] Plaintiffs voluntarily dismissed their New York State Education Law and Section 1983 claims against State Defendants.

3

hearings." Joint App'x at 54. We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision.

When reviewing a dismissal for a plaintiff's failure to exhaust administrative remedies under the IDEA, we examine legal conclusions *de novo* and factual determinations for plain error. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002). "It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004). In New York, a parent may file a due process complaint before an impartial hearing officer with respect to any matter relating to the provision of FAPE under a student's IEP. 20 U.S.C. § 1415(b)(6); 8 N.Y.C.R.R. §§ 200.5(i), (j). After the impartial hearing officer holds a hearing and issues a written decision, a parent may file an appeal with a state review officer. 20 U.S.C. § 1415(g); 8 N.Y.C.R.R. § 200.5(k). "Only after exhaustion of these procedures [does] an aggrieved party [have] the right to file a suit in a federal or state court." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (citing 20 U.S.C. § 1415(i)(2)(A)).[2]

Notwithstanding this general requirement, the IDEA's exhaustion requirement will be excused in those circumstances where exhaustion would be futile. *See Coleman v. Newburgh*

---

[2] The exhaustion requirement applies even if plaintiffs' claims are formulated under a statute other than the IDEA if "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 755 (2017). Here, the gravamen of plaintiffs' claims under Section 1983, Section 504 of the Rehabilitation Act, and the EEOA is the denial of FAPE during the period of remote instruction. Accordingly, these claims are also subject to exhaustion. *See, e.g.*, *Polera*, 288 F.3d at 481, 483 (finding that the exhaustion requirement applied to the plaintiff's claims under the ADA and the Rehabilitation Act because they alleged that the school district failed to provide her with appropriate educational services). Because plaintiffs advance arguments concerning only the "gravamen" element of IDEA exhaustion under *Fry*, 137 S. Ct. at 755, we need not consider whether the EEOA is a "Federal law

4

*Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007). To demonstrate futility, a plaintiff "must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Id.* (internal quotation marks and citations omitted). For example, futility may arise where the complaint alleges "systemic violations" that the administrative review process "had no power to correct," *J.S.*, 386 F.3d at 113. Similarly, futility is established if "the agency has adopted a policy or practice of general applicability that is contrary to law." *Weixel v. Board of Educ. of N.Y.C.*, 287 F.3d 138, 149 (2d Cir. 2002) (internal quotation marks and citation omitted).

As a threshold matter, to the extent plaintiffs argue that exhaustion would be futile merely because the administrative process cannot order the process-oriented remedy that they seek in the form of a special master overseeing a non-adversarial process for compensatory services, we find that argument unpersuasive. We have emphasized that:

> Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Polera*, 288 F.3d at 487 (internal quotation marks and citation omitted). Because of the importance of this administrative framework, plaintiffs suing under the IDEA cannot bypass the exhaustion requirement by "ignor[ing] remedies available under the IDEA and insist[ing] on those of their own devising." *Id.* at 488 (internal quotation marks and citation omitted). In the absence of an alleged systemic violation or a policy or practice that is contrary to law, the mere

---

protecting the rights of children with disabilities" subject to exhaustion under the statute. 20 U.S.C. § 1415(*l*).

5

unavailability of the requested relief in the administrative process does not allow a plaintiff to avoid the exhaustion requirement. *See id*. ("By making an unreasonable or unattainable demand parents cannot opt out of the IDEA." (internal quotation marks and citation omitted)).

However, we disagree with the district court's conclusion that plaintiffs do not allege any systemic violation that could satisfy the futility exception. We have recognized that exhaustion may be futile if "administrative bodies persistently fail to render expeditious decisions" as to due process complaints within the required timeframe. *Frutiger v. Hamilton Cent. Sch. Dist.*, 928 F.2d 68, 74 (2d Cir. 1991). The complaint, in part, sets forth precisely this allegation of systemic delay. More specifically, plaintiffs assert that exhaustion would be futile because the NYC DOE systemically fails to resolve due process complaints within the required timeframe and cannot adequately handle the volume of plaintiffs' complaints. Under federal regulations, the agency must adjudicate a due process complaint within 75 days of its filing. *See* 34 C.F.R. §§ 300.510(b)–(c), 300.515(a) ("The public agency must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b) . . . [a] final decision is reached in the hearing."). Plaintiffs allege that, at the start of the COVID-19 pandemic, "the NYC DOE faced more than 10,000 open complaints, nearly 70% of which had blown past the legal deadline for resolution, forcing families to wait months or even years before receiving the special education services they need." Joint App'x at 46. We conclude that these allegations are sufficient to fall within the futility exception to the exhaustion requirement.[3] *See, e.g.*, *J.S.*, 386 F.3d at 114 (explaining that

---

[3] We do not accept plaintiffs' assertion that they are excused from the exhaustion requirement solely because their class, if certified, would file more claims than the NYC DOE could resolve on a timely basis. There is no "class action exception" to the IDEA that allows a plaintiff, before any class is certified, to sidestep the exhaustion requirement "[s]imply by styling a case as a putative class action." *Mrs. W. v.*

6

exhaustion may be futile if "the nature and volume of [plaintiffs'] complaints [a]re incapable of correction by the administrative hearing process"); *see also Jose P. v. Ambach,* 669 F.2d 865, 868–69 (2d Cir. 1982) (finding that exhaustion was futile because "New York's administrative remedies were not adequate or speedy," and the administrative hearing process was "totally inadequate to handle the thousands of individuals in classes awaiting suitable placement").

On this issue, the district court explained that "considering that Plaintiffs commenced this action approximately eight months after the start of the COVID-19 pandemic, which preceded by several months the time when vaccinations initially became widely available, this court is prepared to make allowances for the fact that the pandemic will [and has] inevitably result[ed] in delays in the [administrative process]." *Z.Q. v. N.Y.C. Dep't of Educ.*, No. 20-cv-9866, 2022 WL 903003, at *5 (S.D.N.Y. Mar. 28, 2022) (internal quotations and citation omitted). However, whether this alleged systemic non-compliance with the 75-day requirement caused by the pandemic constitutes a short-term problem that does not render use of the administration process futile should not be resolved on a motion to dismiss in light of the absence of a developed record.

Defendants do not address NYC DOE's alleged delays, which are at the center of another pending lawsuit in this circuit.[4] Instead, they argue that exhaustion would not be futile because NYC DOE's new program for provision of compensatory education offers the exact relief that plaintiffs seek and allows families to obtain compensatory services outside of the administrative

*Bridgeport Bd. of Educ.*, 96 F. Supp. 2d 124, 134–35 (D. Conn. 2000); *see also J.S.*, 386 F.3d at 113, 115. Rather, we conclude that plaintiffs have plausibly alleged that their own due process complaints are not likely to be adjudicated on a timely basis, as required by the statute and regulations.

[4] In February 2020, a group of students with disabilities filed a lawsuit in the Eastern District of New York seeking to compel NYC DOE to abide by the mandated timelines for due process hearings. *See J.S.M. v. N.Y.C. Dep't of Educ.*, No. 20-cv-705 (E.D.N.Y. Feb. 7, 2020), ECF No. 1. The case is currently pending decision on plaintiffs' partial motion for summary judgment.

hearing process.  In particular, the program provides that, during the 2022–23 school year, all students with IEPs will be automatically considered for compensatory services to remedy the learning gaps caused by remote instruction (the "2022-23 Program").  *See* N.Y.C. Dep't of Educ., Special Education Family Resources, https://www.schools.nyc.gov/learning/special-education/family-resources (last accessed Jan. 26, 2023).  Families do not need to file due process complaints to be considered—instead, each student's IEP team will make an individualized decision as to whether the student requires compensatory services.  *See id.*  Once a student is recommended for compensatory services, the school "will work with [the parents] to ensure services are provided."  *Id.*  Thus, State Defendants argue that plaintiffs' claims "are moot because the NYC DOE's program offers plaintiffs the relief they seek."  State's Suppl. Letter at 2.

Plaintiffs insist that the 2022-23 Program does not provide the relief they seek because "NYC DOE has not disclosed . . . what compensatory services may be offered, what standards will be used to determine the quantity of such services, how quickly they will be provided, [and] whether the students' ability to receive the services is limited to the 2022–23 school year." Appellants' Suppl. Letter at 3.  Furthermore, they state that they are "unaware of *any* IEP recommending compensatory services for remote learning, despite parents' requests at IEP meetings" and argue that the program's funding is insufficient to cover compensatory services for all affected students.  *Id.* at 6–7.  In addition, they note, "if a family disagrees with the services offered by the IEP team, they still must file an administrative due process complaint and navigate the time-consuming, expensive and adversarial hearing process."  *Id.* at 7.  Finally, on the issue of delay, plaintiffs contend that the system is still plagued by systemic delays—alleging, as of fall

8

2022, that approximately 57.6% of NYC DOE administrative cases are out of compliance with the 75-day requirement for adjudication of due process complaints. Because of these persistent delays, plaintiffs argue that NYC DOE's administrative hearing process is "fundamentally inadequate to address the thousands of claims arising from the City's systemic failures to meet the needs of students with IEPs during remote learning" and thus continue to seek the creation of a court-ordered, non-adversarial process for obtaining compensatory services overseen by a special master. *Id.* at 7.

On this sparse record, we cannot conclude that the 2022-23 Program moots plaintiffs' claims or undermines the sufficiency of their futility allegations. As noted by plaintiffs, it is entirely unclear how effective this new program has been at eliminating the alleged systemic delays in the adjudication of due process complaints or in addressing the various other defects that plaintiffs allege exist in its implementation.[5] Defendants are free to raise these arguments in the district court with further development of the record, and, if necessary, plaintiffs can seek to amend the complaint to set forth additional allegations regarding the 2022-23 Program's efficacy at

---

[5] Relatedly, it appears that under New York State Education Law, a parent has the right to request, at any time, that their child's IEP be amended. The Law contemplates that a student's parent may "make[] a request to the school district for an amendment to the [IEP]" and provides that doing so does not relieve the student's committee on special education, of which the parent is a part, of the obligation to review IEPs "at [an] annual meeting, or more often if necessary." N.Y. Educ. Law § 4402(1)(b)(3)(b)(ii) (McKinney); *see id.* § 4402(1)(b)(1)(a) (providing that a student's committee on special education "shall" include "the parents or persons in parental relationship to the student"). The Law's implementing regulations are to the same effect. They provide that "[i]f the student's parent, teacher or an administrator of the school or agency believes that the program or placement recommended in the IEP is no longer appropriate, such party may refer the student to the committee on special education for review." *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(e)(4). However, again, whether these provisions moot plaintiffs' claims is unclear on the record before us. For example, we cannot determine whether the compensatory relief sought by plaintiffs is available through these avenues; indeed, defendants have not argued as much. Nor is it clear whether the parent-plaintiffs have exercised their right to amendment, or whether defendants have complied with the annual IEP review requirement. These issues should be fleshed out on remand as well.

9

remedying the need for compensatory services arising from the City's alleged systemic failures as to students with IEPs during the period of remote learning.[6]

\*         \*         \*

We have considered defendants' remaining arguments regarding exhaustion and conclude that they are without merit. For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** the action for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

---

[6] State Defendants separately argue that, even if the claims against City Defendants should proceed, the dismissal of the claims against State Defendants under the IDEA, the Rehabilitation Act, and the EEOA should be affirmed because plaintiffs have failed to sufficiently allege that State Defendants are responsible for the alleged violations by City Defendants. However, because the district court did not reach these issues, and because there may be additional allegations that plaintiffs seek to set forth in an amended complaint against State Defendants in connection with the 2022-23 Program, we decline in our discretion to consider these issues in the first instance. *See, e.g.*, *Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1317 (2d Cir. 1991). Similarly, we decline to consider State Defendants' additional argument, which was not even raised in the district court, that there is no private right of action under Section 1412(a)(11) of the IDEA. That argument also can be raised in the district court on remand.