MR. & MRS. D., Plaintiffs,

v.

**SOUTHINGTON BOARD OF EDUCATION, Defendant.**

No. 3:99CV453 DJS.

United States District Court, D. Connecticut.

Oct. 20, 2000.

Michael Mc Keon; Lawrence J. Campane; Nicole Alexandra Bernabo; Sulli-

van, Schoen, Campane & Connan, Hartford, CT, for Defendants.

Winona Wellman Zimberlin, Hartford, CT, for Plaintiffs.

### ORDER

SQUATRITO, District Judge.

Upon review and pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 2 of the Local Rules for United States Magistrate Judges (D.Conn.), Magistrate Judge Thomas P. Smith's Recommended Ruling is APPROVED and ADOPTED as the Ruling of this Court, over objection. The Clerk shall enter judgment and close this case.

**IT IS SO ORDERED.**

### RECOMMENDED RULING ON MOTION TO DISMISS

## I. INTRODUCTION

This action is brought by Mr. and Mrs. D., on behalf of their daughter, M.D., pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), the Rehabilitation Act of 1973, 29 U.S.C. § 795 *et seq.*, and section 10–76a *et seq.* of the Connecticut General Statutes.

Plaintiffs seek tuition reimbursement from the Southington Board of Education for the three and one-half years M.D. was unilaterally placed in the Cheshire school system on a tuition basis. In count one of their complaint, the plaintiffs allege that the defendant violated the IDEA, the Rehabilitation Act, and the due process rights secured to the plaintiffs by state and federal constitutions when it failed to provide M.D. with a free appropriate public education ("FAPE"). Count two alleges violations of the same authorities for failure to reimburse the plaintiffs for educational costs they incurred by transferring their daughter to the Cheshire school district. Count three alleges that the plaintiffs' procedural due process rights under the Fourteenth Amendment to the U.S. Constitution were violated when the state hearing officer ("hearing officer") applied the statute of limitations codified at section 10–76h(a)(3) of the Connecticut General Statutes. In the fourth count the plaintiffs claim that section 10–76h(a)(3) of the Connecticut General Statutes violates the equal protection and due process rights provided by the constitutions of Connecticut and the United States. The fifth count alleges a violation of 29 U.S.C. § 795 *et seq.*

The defendant moves for dismissal of all counts pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (docket no. 10). For the following reasons, the court recommends that the motion be **GRANTED,** and that the complaint be dismissed in its entirety.

## II. DISCUSSION

### A. STANDARD

The defendant moves to dismiss the entire complaint in this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When the basis for the motion to dismiss is the applicability of a statute of limitations, the motion is considered under the standard set forth in Rule 12(b)(6) of the Federal Rules. *See Ghartey v. St. John's Queens Hospital,* 869 F.2d 160, 162 (2d Cir.1989); *Joslin v. Grossman,* 107 F.Supp.2d 150, 154 (D.Conn. 2000).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss "merely ... assess[es] the legal feasibility of the complaint. [It does] not ... assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980).

In deciding a motion to dismiss, the court must accept all well-pleaded allega-

tions as true and draw all reasonable inferences in favor of the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990)(citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683).

Ordinarily, the subject matter of the court's review in deciding a motion to dismiss under Rule 12(b)(6) is confined to the complaint itself, but the court may expand the scope of its review in the appropriate circumstances. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (holding that court may consider, in addition to the complaint, "matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit"). Specifically, the court can consider administrative materials if they serve as the basis for the plaintiffs' claim. *See Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Where plaintiff has actual notice of all then information in the movant's papers and has relied upon these documents in framing the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *In re Hunter Environmental Services, Inc. Securities Litigation,* 921 F.Supp. 914, 918 n. 3 (D.Conn.1996) (stating that a court may consider administrative materials). Thus, in consideration of the instant motion, the court will take judicial notice of the state Board of Education Final Decision and Order 98–217, dated February 1, 1999 ("Final Decision"), (Def.'s Mot. Dismiss, Ex. B).

## B.  FACTS

The court's examination of the complaint and the Final Decision, construed most favorably to the plaintiff, reveals the following facts. M.D. was adopted into the family of Mr. and Mrs. D. at age three. Prior to the adoption, M.D. had already been in three different homes. She suffered from an attachment disorder and a speech and language disorder. M.D. was a special education student in the defendant's schools from 1983 to 1994; from preschool until the middle of ninth grade. The complaint alleges that M.D. was not always in an appropriate program, the Southington schools did not always follow the program outlined for her, and the quality of the Southington education continued to deteriorate.

Throughout this time period, the parents became disenchanted with Southington's efforts to meet their child's education needs. The parents expressed these concerns in a letter, dated November 30, 1993, to Mr. Langdon, the assistant principal of M.D.'s school, and in a conference pertaining to M.D.'s individual educational plans ("IEPs") with the Southington Board of Education ("Board"). Despite the parents' concerns, the Board did not take action to correct the perceived deficiency in M.D.'s education.

On January 12, 1994, the parents responded to the Board's alleged inaction by unilaterally placing M.D. out of the Southington district into the special education program in Cheshire, on a tuition basis. According to the complaint, sometime after the enrollment at Cheshire, the plaintiffs realized the alleged inferiority of the Southington education as a result of M.D.'s vast improvement.

M.D. graduated from Cheshire High School in June of 1997. The plaintiffs requested a hearing seeking tuition reimbursement for M.D.'s three years in Cheshire from defendant on April 19, 1998, and the hearing was held on May 29, 1998.

On May 29, 1998, the planning and placement team ("PPT") denied the plaintiffs' request for reimbursement of tuition paid to Cheshire on the ground that the placement was a unilateral decision and notice was not given to Southington regarding their decision or disagreement with the IEP. On July 31, 1998, the plaintiffs filed for a due process hearing before a hearing officer in order to contest the PPT decision to deny tuition reimbursement. On November 15, 1998, the hearing officer issued a decision on a motion to dismiss, which limited the time frame for which the plaintiffs could recover tuition. On February 1, 1999 the officer issued a Final Decision dismissing the plaintiffs' claims in their entirety. This lawsuit was filed on March 12, 1999.

## C. IDEA CLAIMS

The instant action is an appeal of the Connecticut State Department of Education due process hearing decision. The plaintiffs have brought suit under the IDEA in order to be reimbursed for tuition they paid for the special education program in Cheshire.

The IDEA creates a statutory scheme for monitoring a disabled child's educational progress by which both the school board and the parents or guardian of the child are active participants. *See Mrs. M. v. Bridgeport Bd. Of Ed.*, 96 F.Supp.2d 124, 128 (D.Conn.2000). As such, the parents and the school board meet annually to discuss an individual education plan ("IEP") for the child, pursuant to 20 U.S.C. § 1414(d)(4)(A)(I). *See M.C. ex rel. Mrs. C. v. Voluntown Bd. of Ed.*, No. 99–9282, 2000 WL 1253759, at *1 (2d Cir. Sept.1, 2000). Should the parents disagree with this IEP, they are entitled to a due process hearing with the state or local agency challenging the educational body's decision. *See id.* Once the parents have exhausted their state remedies, they may seek review of any adverse decision in state or federal court. *See id.*

The IDEA grants the court the ability to "grant such relief as the court determines is appropriate," 20 U.S.C. § 1415(I)(2)(B)(iii), and the U.S. Supreme Court has interpreted this language to include the authority to issue "a prospective injunction directing the school officials to develop and implement at public expense an IEP plating the child in a private school." *School Committee of the Town of Burlington v. Dept. of Ed. Of Mass.*, 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). As a compliment to the court's ability to issue prospective relief, the Court also interpreted the IDEA to allow a party to seek reimbursement requiring the education provider to "belatedly pay expenses that it should have borne in the first instance had it developed a proper IEP." *Id.* at 370–71, 105 S.Ct. 1996. Thus, although the IDEA contemplates maintaining the status quo throughout the course of the administrative process, *see* 20 U.S.C. § 1415(j) ("Stay–Put Provision"), the Supreme Court has allowed parents to unilaterally withdraw their child from the previous placement and seek tuition reimbursement for the new placement if the parents prove that "first, whether the challenged IEP was adequate to provide the child with a free appropriate public education; and, second, whether the private educational services obtained by the parents were appropriate to the child's needs." *M.C.*, 226 F.3d at 66.

Plaintiffs' complaint seeks such relief. The plaintiffs claim that the 1994 out of district placement to Cheshire was the end result of years of unsatisfactory IEPs, and of the defendant's inability to follow the IEPs that were in place. In response, defendant argues that plaintiff's claims should be dismissed because any challenge to the Board's education plan following the parents' unilateral withdrawal of M.D. from Southington's schools is barred by the applicable statute of limitations set forth in section 10–76h(a)(3) of the Connecticut General Statutes.

The defendants argue that the IDEA claims raised in counts one, two, three, and four should be dismissed for failure to state a claim. These claims, they argue, are barred from administrative review by the two year statute of limitations set forth in section 10–76h(a)(3) of the Connecticut General Statutes because the plaintiff failed to file for due process until 1998, approximately four years after M.D.'s unilateral enrollment in the Cheshire school system. For the reasons set forth below, the court finds that these claims should be dismissed because they are time-barred by the applicable statute of limitations.

1. *STANDARD OF REVIEW*

■ In cases brought pursuant to the IDEA, the district court is required to use a "modified de novo" standard of review in evaluating state administrative determinations. *See Board of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Under this standard, a reviewing court is "required to give due weight to the findings of a state administrative proceeding." *Mr. and Mrs. H v. Region 14 Bd. of Ed.*, 46 F.Supp.2d 106, 108 (D.Conn. 1999) (internal quotation marks omitted); *see Mr. and Mrs. J. v. Norwalk Bd. of Ed.*, No. 97cv01445, 1999 WL 795553, at *3 (D.Conn. Aug.26, 1999).

Given the complexity of the IDEA, the court is ordinarily loathe to lightly substitute its own judgment for that of the hearing officer. *See Walczak v. Florida Union Free School District*, 142 F.3d 119, 129 (2d Cir.1998). Specifically,

[i]n reviewing whether a particular educational plan adopted by a school district meets the requirements of IDEA, the Court must normally afford substantial deference to the determinations of state and local officials who possess the expertise in the formulation of educational programs for the handicapped.

*Corchado v. Board of Educ, Rochester City*, 86 F.Supp.2d 168, 172 (W.D.N.Y. 2000) (internal quotation marks omitted; quoting *Briggs v. Board of Ed. of State of Conn.*, 882 F.2d 688, 693 (2d Cir.1989)); *see generally Board of Ed. v. Rowley*, 458 U.S. 176, 207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)(holding that deference to the findings of state and local agencies secures that federal courts do not "impos[e] their view of preferable educational methods upon the States"). This deference in matters pertaining to reviewing education plans preserves the intent of the legislature and also protects the rights of the children the IDEA was intended to serve. *See Muller v. Committee on Special Education of the East Islip Union Free School District*, 145 F.3d 95, 101 (2d Cir.1998).

■ In the instant case, however, the core issue is not the application of the IDEA's complex provisions to an individual situation, but rather a matter of statutory interpretation. In such matters "the district court [is] as well-positioned as the state administrative officials" to adjudicate problems of statutory interpretation. *Muller*, 145 F.3d at 102 (citing *Mrs. B v. Milford Bd. Of Ed.*, 103 F.3d 1114, 1122 (2d Cir.1997), which holds that administrative decisions concerning issues of law are not afforded the customary deference in IDEA cases). Accordingly, the court will afford due deference to the hearing officer's findings of fact, and general familiarity with the state statutory scheme, but will review the application of the statute in question to those facts de novo. *See id.; Corchado v. Bd. Of Ed. Rochester City*, 86 F.Supp.2d 168, 172 (W.D.N.Y.2000).

The defendants move to dismiss the claims brought pursuant to the IDEA on the grounds that the hearing officer's decision was not an abuse of discretion and is therefore not subject to the court's review. As discussed above, deference to the administrator's decision is unwarranted when reviewing issues of statutory interpretation, so the court will review the issue of the applicability of section 10–76(a)(3) of the Connecticut General Statutes de novo. Although the court's analysis of this issue departs slightly from the administrator's, the court reaches the same conclusion, and

finds that the plaintiff's claim for tuition reimbursement are time-barred.

2. *APPLICABILITY OF SECTION 10–76h(a)(3)*

■ Since the IDEA does not contain its own statute of limitations, the courts are obliged to "apply the most closely analogous statute of limitations under state law." *Wilson v. Garcia,* 471 U.S. 261, 267–268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). However, Connecticut has passed legislation, codified at sections 10–76a *et seq.* of the Connecticut General Statutes, to ensure compliance with the terms of the IDEA. *See Mrs. M. v. Bridgeport Bd. Of Ed.,* 96 F.Supp.2d 124, 128 (D.Conn.2000). Section 10–76h(a)(3) explicitly sets forth the time frame in which the appropriateness of an educational placement may be challenged:

> A party shall have two years to request a hearing from the time the board of education proposed or refused to initiate or change the identification, evaluation or educational placement or the provision of a free appropriate public education placement to such child or pupil provided, if such parent, guardian, pupil or surrogate parent is not given notice of the procedural safeguards, in accordance with regulations adopted by the State Board of Education, including notice of the limitations contained in this section, such two-year limitation shall be calculated from the time notice of the safeguards is properly given.

Conn. Gen.Stat. § 10–76h(a)(3). The statute is in keeping with the goals of the IDEA, and is similar to myriad statutes found in other states. *See Adler by Adler v. Education Dept. Of State of N.Y.,* 760 F.2d 454, 455–460 (2d Cir.1985) (discussing the permissibility of borrowing the most analogous New York statute for the purposes of the IDEA).

This limitation was correctly applied in the underlying administrative proceeding. The plaintiffs argue that this statute is not applicable because it does not specifically mention tuition reimbursement. The only authority cited by the plaintiff is *K.P. v. Juzwic,* 891 F.Supp. 703, 717 (D.Conn. 1995), which held that the time period for bringing a claim for compensatory education, resting upon the same foundation as a claim for tuition reimbursement, is either six or three years. *See id.* However, this portion of the court's analysis did not consider the potential applicability of section 10–76h(a)(3), because the legislature did not amend the statute to include the two-year limitations period until after that case was decided. *See* An Act Concerning Special Education Due Process, the cost of Special Education and a School Construction Project, P.A. 95–273 § 7 (July 6, 1995) ("This act shall take effect from its passage except that section 1 to 5, inclusive, shall take effect on July 1, 1995"); *K.P.,* 891 F.Supp. at 703 (rendering decision on June 19, 1995). The plaintiff fails to cite to another area of the Connecticut General Statutes that comes close to mentioning this type of proceeding. The plaintiff cannot refute that the statute is comprehensive in its handling of "special education hearing and review procedure." Conn. Gen.Stat. § 10–76h. Section 10–76h(a)(3) is the applicable statute of limitations for requesting a due process hearing in an action for tuition reimbursement based upon an alleged denial of an appropriate IEP.

3. *CONSTITUTIONALITY OF SECTION 10–76h(a)*

■ The plaintiffs also seem to allege that section 10–76h(a)(3) of the Connecticut General Statutes is unconstitutional on its face. The plaintiffs claim the statute violates the equal protection guarantees, procedural due process rights, and substantive due process rights provided by the constitutions of Connecticut and the United States. These default constitutional arguments are without merit and wholly unsupported by applicable case law. The state statute is in keeping with the man-

dates of the IDEA and federal precedent. *See Adler,* 760 F.2d at 455–460.

Furthermore, in order to state a viable claim for a violation of due process rights, plaintiffs must plead allegations beyond those within the purview of the IDEA. *See Engwiller v. Pine Plains School District,* No. 00Civ.2436(CM), 2000 WL 1207191, at *13 (S.D.N.Y. Aug.16, 2000). The allegations set forth in the complaint fall squarely within the mandate of the IDEA, and are addressed as such in this opinion.

### 4. *APPLICATION OF SECTION 10–76h(a)(3)*

Plaintiffs also argues that, even if section 10–76h(a)(3) does apply, they have complied with its terms by requesting a due process hearing on May 29, 1998. Plaintiffs claim that, because the cause of action for tuition reimbursement accrued when M.D. made significant progress in her new unilateral placement, the request for the due process hearing was timely. In support of their position, plaintiffs rely upon *K.P. v. Juzwic,*[1] which held that the cause of action in that case "did not accrue until K.P.'s substantial gains at Brown–Sullivan [the unilateral placement] indicated that he had the capacity to develop life skills, and vocational skills and attain academic goals previously thought impossible." *K.P.,* 891 F.Supp. at 716–17. Thus, plaintiffs argue that the cause of action accrued sometime within M.D.'s last year of high school, or sometime after May 29, 1996.

■ Upon its own examination of the issue, the court finds that the cause of action in this case accrued when the parents unilaterally withdrew M.D. from Southington's school system on January 14, 1994. The date of the accrual of a cause of action is determined by federal law, and accrues "when the parents know

or have reason to know of the injury or event that is the basis for their claim." *James v. Upper Arlington City School District,* 987 F.Supp. 1017, 1023 (S.D.Ohio 1997) (quoting *Hall v. Knott County Bd. Of Ed.,* 941 F.2d 402, 408 (6th Cir.1991)). In *James,* the court held that the parents' claim for tuition reimbursement was time barred when the parents waited six and one-half years to request a due process hearing following the unilateral withdrawal of their child from the original school system. *See id.* The court reasoned that, since the parents were aware of the perceived shortcomings in the original system's education, and were also aware of their right to challenge such shortcomings at the time, the cause of action accrued when the unilateral withdrawal took place. *See id.*

Similarly, in *Bernardsville Bd. of Ed. v. J.H.,* 42 F.3d 149 (3d Cir.1994), the court looked to the date when the parents unilaterally withdrew their child from the original school district and concluded that a waiting period of over two years was an "unreasonable delay." *Id.* at 158. The court determined that

> [a]bsent initiation of review proceedings within a reasonable time of a unilateral decision to transfer a child to a private institution, a school district would not know to continue to review and revise an IEP, and the court would be left to hazard conjecture or hypothesis as to what the Board of Education might have proposed if it had been informed of the parents' continued intent to pursue an appropriate education for their child within the school district.

*Id.* Although the court was not working with a specified statute of limitations, it recognized the need for limitations upon the parents' ability to seek tuition reimbursement based upon practical consider-

---

1. The hearing officer and the defendant state with conviction that *K.P.* is no longer valid authority because it was decided prior to the enactment of section 10–76h(a)(3). Although they may be correct for the limited purpose of

the applicability of that statute, the court finds that other aspects of the court's discussion are indeed germane to the issues presented in this case.

ations, and imposed a "corresponding parental duty," once fully cognizant of the procedural safeguards, to seek a reasonably prompt review of the propriety of a school's IEP. *See id.*

■ The court finds that the cause of action in the instant case accrued when the parents of M.D. unilaterally removed her to Cheshire's school system. A review of the Final Decision reveals that the parents were familiar with the procedural safeguards of the IDEA, and were also not satisfied with the education Southington was providing to M.D. The hearing officer noted that the mother testified that she "considered due process but did not file because she was concerned about the adversarial nature of the process" and that she "considered due process while the student was at the unilateral placement, but felt that the student was not emotionally ready for a due process hearing...." (Def.'s Mot. Dismiss, Ex. B. ¶ 16 at 4). Such statements support the conclusion that the parents made an informed choice about unilaterally withdrawing M.D., and in doing so decided to forgo any procedural remedies implemented by the IDEA.

This conclusion is in accord with the general purpose of the IDEA: to promote cooperation between the school and the parents in fashioning a suitable education for a child. Although the Supreme Court eschewed a stringent interpretation of the IDEA when it allowed an action for tuition reimbursement in *Burlington,* actions such as those brought by the plaintiffs in this case call for an unwarranted extension of the equitable principles discussed in that case. The Court held that unilateral withdrawal of a child does not foreclose all remedies, but it did not hold that unilateral withdrawal would not foreclose all remedies in all situations; surely a reasonable

limitation, such as that called for in *Bernardsville,* imposed by the legislature could preserve a balance of the equities. In *Burlington,* the Court emphasized that a claim for tuition reimbursement was not to be considered a claim for damages, aloof from the procedural scheme to promote cooperation between the school and the parent, but rather was to be considered a solution to avoid forcing parents "to leave the child in what may turn out to be an inappropriate private school placement or to obtain the appropriate placement only by sacrificing any claim for reimbursement." *School Committee of the Town of Burlington,* 471 U.S. at 372, 105 S.Ct. 1996. The Court contemplated that this remedy would serve as a complement to the review process, and not as a replacement.[2]

For the purposes of this case, the injury occurs when the parents knew or should have known of the injury. *See Hall,* 941 F.2d at 408. The purpose of the statute is not to allow plaintiffs to wait to realize the benefit of a new placement. The triggering event is when the plaintiffs know or should know that the injury, an inappropriate education, has occurred. In this case, the parents were aware of the alleged injury to their child when they unilaterally placed her out of what they judged to be an inferior school district. The cause of action accrued on January 14, 1994, and therefore the IDEA claims set forth in the complaint are time-barred.

### 5. *EQUITABLE TOLLING*

■ The hearing officer was correct not to deem the statute of limitation tolled based on the facts of the plaintiffs' case. Once the decision was made to apply section 10–76h(a)(3), the hearing officer considered the plaintiff's argument that the

---

**2.** The court is aware of the Supreme Court's admonition not to place heavy emphasis upon the burden to the school district. *See Florence County School District Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (stating that a school district may avoid undue burdens on their budgets by

avoiding tuition reimbursement suits altogether by providing a FAPE in the first place). However, a predicate to this warning is that the school district be given ample opportunity, through the review provisions of the IDEA, to make any changes that may be warranted, which was not done in this case.

facts warranted equitable tolling. The statute requires plaintiffs to have "notice of the procedural safeguards" available to them:

> if such parent, guardian, pupil or surrogate parent is not given notice of the procedural safeguards, in accordance with regulations adopted by the State Board of Education, including notice of the limitation shall be calculated from the time notice of the safeguards is properly given.

Conn. Gen.Stat. § 10–76h(a)(3). Plaintiffs argue here, as they did below, that the board did not give them notice of the two year statute of limitation. This lack of notice, they say, triggers the equitable tolling provision set forth in the statute. The plaintiffs argue they were not given notice by the board of the particulars of section 10–76h(a)(3) until their demand for reimbursement was denied on May 29, 1998.

That the parents in this case were aware of their procedural rights is a certainty. There is every indication in the record that the plaintiffs knew of the due process review available to them and had, in fact, considered initiating due process proceedings prior to removing their child from the defendant's school. The fact that the defendant board may or may not have, in effect, warned the plaintiff that the limitations period was two years is irrelevant in this case. It is clear that the plaintiffs had the notice which is required by the statute.

Though the defendant's papers are silent on the issue of the notice explicitly required by section 10–76h(a)(3) of the Connecticut General Statutes, the administrator's Final Decision offers guidance. The hearing officer found that a contract was signed by the parents regarding payment of the Cheshire program: "The parents signed a contract that they would pay the cost of the student's education even though the unilateral placement was another public school in another LEA." (Def.'s Mot. Dismiss Ex. B ¶ 17 at 4). This contract suggests the parents had knowledge of the legal issues and due process safeguards pertinent to their situation.

More compelling, though, is the finding of the hearing officer that the plaintiffs were considering initiating due process as early as 1993 to challenge the board's IEPs:

> The parents were aware that due process was an avenue they could follow but made, it seems, a well thought out decision not to seek due process. They obtained an evaluation from an educational consultant who reviewed the student's educational records but then waited more than another year after the evaluation to file for due process.... [In 1993] The Parent considered due process but did not file because she was concerned about the adversarial nature of the process.

(Def.'s Mot. Dismiss Ex. B ¶ 4 at 5, ¶ 16 at 4).

This was not a situation where the parents took their child out of district without any understanding of their due process rights. There is evidence of considerable communication among the parents, the board, and the child's teachers that stretched over several years prior to the out-of-district placement. The parents' contemplation of initiating due process coupled with their contractual undertaking to pay for their unilateral placement also suggests that, in this case, the parents were on sufficient notice of their due process rights. *See Frith v. Galeton Area School District*, 900 F.Supp. 706 (M.D.Pa. 1995), (citing 20 U.S.C. §§ 1401–1485 and stating that "[s]tudent's parents received adequate notice of their right to appeal decisions made by school administrators regarding student's academic process, so that parents and student were not excused from exhausting their administrative remedies under the [IDEA]; record was replete with letters, notice forms, and other documents indicating that at every critical junction, parents were reminded, of their right to pursue the matter further"). The hear-

ing officer's decision not to toll the statute of limitation was not incorrect and is supported by the facts of this case and the applicable law.

Also noteworthy is that, in their papers, the plaintiffs mischaracterize the hearing officer's application of the statute of limitations. Contrary to the plaintiffs' representation, crucial evidence *was* allowed in by the hearing officer. The limitation expressed in the hearing officer's ruling on the motion to dismiss was applied in so far as the parents, after putting on evidence relevant to the quality of the educational program, could only be reimbursed for the years of 1996 and 1997. The hearing officer barred all recovery, not all evidence, prior to 1996. After hearing all the evidence, and consequently offering the parents the maximum procedural leeway, the hearing officer properly dismissed all claims.

After a de novo review of all the relevant materials, the court finds that the hearing officer properly decided not to toll the statute of limitation. As such, upon review of the hearing officer's decision, the court dismisses the IDEA claims in their entirety because they are time-barred by the applicable statute of limitations.

## D. REHABILITATION ACT CLAIMS

■ The plaintiffs' claims that arise under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 should also be dismissed. The defendants argue that the claims that arise under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, found in counts one, two, four, and five should be dismissed for two reasons: 1) § 504 provides no greater relief than the IDEA, therefore the claims are redundant; and 2) since the § 504 claims are based on M.D.'s education program, the statute that bars the IDEA claims also bars the Rehabilitation Act claims. Because the court has found that plaintiffs' IDEA claims are time-barred by section 10–76h(a)(3) of the Connecticut General Statutes, it follows that the court should not hear the claims brought under the Rehabilitation Act.

Any claims brought pursuant to the Rehabilitation Act are subject to the IDEA's administrative requirements. Section 504 of the Rehabilitation Act prohibits discrimination on the basis of a disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Generally speaking, actions brought under this section do not require exhaustion of administrative remedies. *See Henchey v. North Greenbush,* 831 F.Supp. 960, 968 (N.D.N.Y.1993). A majority of courts have declined to require exhaustion of administrative remedies, except in cases seeking relief available under the IDEA.

Title 20 U.S.C. § 1415(f) states that

[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 790 et seq.], or other Federal statutes protecting the rights of handicapped children and youth, *except that* before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section *shall* be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(f) (emphasis added). Since the plaintiff's instant claims arise out of the same set of facts as their IDEA claims, they are subject to the underlying administrative proceeding and judicial review of the IDEA claims.

The court has already determined the plaintiffs' IDEA claims are time-barred. Any Rehabilitation Act claims plaintiffs may attempt to bring now should not be heard by the court. To the extent that the plaintiff's Rehabilitation Act claims arise out of the same facts alleged under the IDEA claims, they are subject to the same statute of limitation preclusion applied to

the IDEA claims. To the extent that they may involve facts not brought up under the hearing under the IDEA, they should be the subject matter of an administrative proceeding before being reviewed by the court. *See Hope v. Cortines,* 872 F.Supp. 14, 19 (E.D.N.Y.1995) (discussing effect of failure to exhaust administrative remedies under the IDEA).

Thus, to the extent plaintiffs' claims are based upon the IDEA claims raised below, they should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. To the extent plaintiffs' claims fall outside the scope of the IDEA claims raised below, dismissal under Rule 12(b)(1) is also warranted.

### E.  SUBSTANTIVE DUE PROCESS

■ The substantive due process claims found in counts one, two, and four should also be dismissed. Defendant moves for the dismissal of the substantive due process claims found in counts one, two, and four because the plaintiffs have not suffered a deprivation of a property interest. The purpose of the IDEA administrative structure is to protect the due process and rights of disabled children and their parents. It therefore follows that any claim of a deprivation of due process rights arising out of facts and events that are embraced by the IDEA, as the preceding paragraph patently is, must first be submitted to a due process hearing. *See Hope v. Cortines,* 872 F.Supp. at 20–21.

Here, the plaintiffs' claims were submitted to the hearing officer and carefully considered. The record does not support the claim that the defendant board deprived M.D. of a constitutionally protected property interest because the record does not support the claim that the defendant board denied M.D. or her parents due process. There is no evidence that fairly supports a finding that the hearing officer abused his discretion or ruled against the weight of the evidence.

### III.  *CONCLUSION*

. For the foregoing reasons, defendant's motion to dismiss (docket no. 10) should be **GRANTED** pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6). The case should be dismissed, and the clerk should be ordered to close the file.

Either party may seek review of this recommended ruling as provided in 28 U.S.C. § 636(b) (written objections to recommended ruling must be filed within ten days of service of the same); Fed. R. Civ. Pro. 6(a), 6(e), & 72; and Rule 2 of the Local Rules for United State Magistrate Judges (D.Conn.). **Failure to object in a timely manner may preclude further review.** *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989).