**NEW PALTZ CENTRAL SCHOOL DISTRICT, Plaintiff,**

v.

**Linda ST. PIERRE, on behalf of M.S., Defendant.**

**No. 1:01–CV–981(FJS/RFT).**

United States District Court,
N.D. New York.

Feb. 4, 2003.

Shaw & Perelson, LLP (Mark K. Lambert, Esq., of Counsel), Poughkeepsie, NY, for Plaintiff.

Office of Thomas P. Halley (Thomas P. Halley, Esq., of Counsel), Poughkeepsie, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiff New Paltz Central School District commenced the instant litigation pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 *et. seq.* ("IDEA"), seeking a declaration from the Court that the impartial hearing officer's ("IHO") and state review officer's ("SRO") findings were erroneous. Both the IHO and SRO determined that Plaintiff failed to offer Defendant Linda St. Pierre's child, M.S., a free appropriate public education ("FAPE") for the 1999–2000 and 2000–2001 school years. As a result, Plaintiff was ordered to reimburse Defendant for the expenses of M.S.'s placement at a private residential school during those years.[1]

### II. BACKGROUND [2]

Defendant's child, M.S., began attending Plaintiff's schools in the fourth grade. He was often on the honor roll and scored in the 99th percentile on the Comprehensive Test of Basic Skills ("CTBS"). He was recommended for accelerated math in the seventh grade and received glowing comments from his eighth grade teachers.

In the summer of 1997, prior to his 9th grade year, M.S's parents began divorce proceedings. Defendant sought assistance from Plaintiff for her son because he was exhibiting uncontrollable behavior at home, he was often angry and upset, and his academic performance was substantially declining. The school psychologist, Joan Vreeland, observed that M.S. was either sad or angry and that he rarely smiled or made eye contact with adults. Although M.S. saw several psychologists, he showed no signs of improvement.

During the summer of 1998, Defendant suspected that M.S. was using drugs and contacted Plaintiff. As a result, M.S. was placed in an out-patient substance abuse program, which was ultimately unsuccessful. According to Ms. Vreeland, M.S.'s academic performance was substandard,

---

1. Defendant counterclaims seeking reimbursement of all costs associated with the placement of M.S. in a private residential school.

2. The SRO adopted and relied upon the IHO's findings of fact in making his determination.

Since there is sufficient evidence in the hearing record to support the officers' findings of facts, the Court, under *Muller v. Comm. on Special Educ. of East Islip Union Free Sch. Dist.,* 145 F.3d 95, 102 (2d Cir.1998), must give these findings due deference.

his school attendance record was poor and his behavior at home worsened.[3] Ms. Vreeland referred Defendant to the Family Foundation School and ultimately recommended placement there.[4]

On September 7, 1999, Dan Seyler–Wetzel, Plaintiff's Coordinator of Special Education, advised Defendant that she should write a referral to the Special Education Office. Defendant prepared a letter on September 8, 1999, requesting that Plaintiff's Committee on Special Education ("CSE") evaluate her son for a suspected emotional disability. Defendant never sent the letter, however, because Ms. Vreeland advised her that such a referral was unnecessary.

In a September 9, 1999 memorandum to the interim superintendent, Barbara Clinton, the school's principal, stated that both she and Ms. Vreeland believed that M.S. needed a placement at the Family Foundation School and requested that Plaintiff pay the tuition. Plaintiff denied their request for payment of tuition.[5] On September 16, 1999, M.S. began attending the Family Foundation School at Defendant's expense.

On March 30, 2000, the superintendent asked Defendant whether she wished to make a referral to the CSE. By letter dated April 25, 2000, Defendant formally requested that the CSE evaluate her son.

On July 13, 2000, the CSE classified M.S. as emotionally disturbed. In reaching this determination, the CSE performed and considered the following evaluations: (1) health record; (2) psychological evaluation; (3) educational evaluation; (4) teacher report; and (5) a social history. The CSE did not arrange for or consider a student observation at the Family Foundation School, a student psychiatric evaluation or a functional behavioral assessment.

On July 28, 2000, the CSE recommended a residential school placement and established an individualized education plan ("IEP"). On January 16, 2001, the CSE chairperson determined that Kids Peace would meet M.S.'s needs.[6]

M.S. markedly improved while at the Family Foundation School, thereafter graduating from the school in June 2001. The Family Foundation School principal reported that M.S. had maintained an average of 88 and passed five New York State Regents exams with an average of 89. He was later accepted by several colleges.

Defendant requested an impartial hearing on October 26, 2000, challenging whether Plaintiff provided M.S. with an FAPE in September 1999 and requesting reimbursement for all costs associated with M.S.'s attendance at the Family Foundation School for the 1999–2000 and 2000–2001 academic years. The hearing commenced on February 27, 2001, before an IHO.[7]

---

**3.** Ms. Vreeland stated that M.S.'s attendance was very poor, and although his grades were passing, they were very low. *See* Deposition of Joan Vreeland, dated February 27, 2001 ("Vreeland Deposition"), at 129. Additionally, she stated that M.S.'s behavior at home continued to deteriorate. *See id.* at 128.

**4.** The Family Foundation School is a private residential boarding school that provides a highly structured environment, individual and group psychotherapy, and a New York State Regents academic curriculum. At the time of M.S.'s placement, the State Education Department had not approved the Family Foundation School as an instructional center for children with disabilities.

**5.** Defendant thereafter submitted several requests to Plaintiff for payment of M.S.'s attendance at the Family Foundation School.

**6.** Kids Peace is a residential school.

**7.** At the hearing, Plaintiff requested that the matter be remanded back to its CSE for addi-

On June 7, 2001, the IHO rendered his decision, determining that Plaintiff should have referred Defendant's son to its CSE in September 1999, since both the school's principal and psychologist stated that M.S. belonged in a residential school at that time. He also found that the CSE appropriately classified M.S. as having an emotional disturbance and, therefore, disabled under the IDEA, despite the fact that not all necessary evaluations were performed. Finally, the IHO determined that Plaintiff failed to provide M.S. with an FAPE and ordered Plaintiff to reimburse Defendant for tuition, room and board and laptop computer expenses. Thereafter, Plaintiff appealed the IHO's decision to the SRO. On March 27, 2002, the SRO affirmed the IHO's findings. Plaintiff then commenced the instant action.

Presently before the Court is Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking a declaration that the findings of the IHO and the SRO were erroneous. Giving due deference to these factual findings, which are amply supported by the administrative record, the Court will address each of Plaintiff's arguments. *See Muller*, 145 F.3d at 102.

### III. DISCUSSION

#### A. Standard of Review

Summary judgment is appropriate "if ... there is no genuine issue as to any material fact and... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard applies even in the context of a declaratory judgment action. *See Roe v. City of N.Y.*, 232 F.Supp.2d 240, 252 (citing *U.S. v. State of New York.*, 3 F.Supp.2d 298, 307 (E.D.N.Y. 1998)). In an IDEA action, however, " '[t]he inquiry ... is not directed to dis-

cerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes....' " *A.S. ex rel S. v. Norwalk Bd. of Educ.*, 183 F.Supp.2d 534, 539 (D.Conn.2002) (quotation omitted).

■ The district court must use "a 'modified *de novo* ' standard of review in evaluating state administrative determinations." *Mr. & Mrs. D. v. Southington Bd. of Educ.*, 119 F.Supp.2d 105, 110 (D.Conn. 2000) (citation omitted). On one hand, the court "must 'give "due weight" to [the administrative] proceedings, mindful that the judiciary generally "lack[s] the specialized knowledge and experience necessary to resolve ... questions of educational policy." ' " *A.S.*, 183 F.Supp.2d at 539 (quotation and other citation omitted). On the other hand, the court must review conclusions of law based upon the interpretation of federal statutes *de novo*. *See Muller*, 145 F.3d at 102; *Mr. & Mrs. D*, 119 F.Supp.2d at 110.

#### B. The CSE's classification of M.S. as an emotionally-disturbed student

■ The CSE classified M.S. as "emotionally disturbed" on July 13, 2000. *See* Contents of Administrative Record, Impartial Hearing Officer's Decision, with Attachments A–D ("IHO Report"), at 11. Plaintiff argues that, because the CSE failed to conduct a complete evaluation of M.S. and to perform all of the necessary tests, e.g. functional behavioral assessment, psychological evaluation and an observational evaluation, as required by law, its classification is unsupported and improper. *See* Plaintiff's Memorandum of Law at 15.

---

tional evaluation. The IHO denied Plaintiff's request, however, declaring the issue moot

because M.S. was near graduation from high school.

At the hearing, Plaintiff requested that the CSE perform the additional evaluations. *See* Plaintiff's Verified Complaint, Exhibit "A" ("SRO Report"), at 3. The IHO denied the request, however, holding that such evaluations were moot since M.S. was nearing graduation from high school and had improved both academically and socially since he had entered the Family Foundation School. *See id.* Ultimately, both officers held that Plaintiff could not disavow the CSE's determination that M.S. suffered from an emotional disturbance. *See* SRO Report at 4.

The Court agrees with the IHO and SRO that Plaintiff cannot now disavow its own CSE's determination. Moreover, requiring the CSE to conduct the additional evaluations would have served no purpose since M.S. was about to exit the educational system.

Accordingly, the Court denies Plaintiff's motion for summary judgment to the extent that it challenges this aspect of the administrative officers' findings.

## C. M.S. was disabled under the IDEA

■ Plaintiff alleges that M.S. was not disabled under the IDEA since he did not manifest any of the characteristics of an emotional disturbance when not using drugs. In essence, Plaintiff argues that M.S. was a socially-maladjusted child and, therefore, not covered under the IDEA.[8]

Resolution of this issue requires the Court to review the underlying facts upon which the IHO and SRO relied in determining that M.S. was disabled under the IDEA; that is, the Court must look at M.S.'s behavior and academic performance during the years in question, giving due deference to the administrative findings, and then determine whether the IDEA applies. *See Muller*, 145 F.3d at 102.

The IDEA and the New York State Education Department Regulations together set forth the criteria for identification of a child with a disability.[9] *See* Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400–1491 (2000); N.Y. Comp.Codes R. & Regs. tit. 8 (2003). A child with a "serious emotional disturbance" is a child with a disability.[10] *See* 20 U.S.C. § 1401(a)(1)(A)(i); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(zz) (2003). An emotionally-disturbed student exhibits

> one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance:

**8.** Plaintiff relies upon *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659 (4th Cir.1998), for the proposition that a child who exhibits behavioral problems is socially maladjusted rather than emotionally-disturbed and, therefore, not disabled within the meaning of the IDEA. However, *Springer* is distinguishable from the present case. In that case, there was no sign that the student suffered from an independent emotional disturbance in addition to being socially maladjusted. Unlike this case, the student in *Springer* did not meet any of the characteristics outlined in the regulations. *See Springer*, 134 F.3d at 664. For example, the student in *Springer* was able to maintain interpersonal relationships with teachers and peers and did not show signs of pervasive unhappiness. *See id.* at 661. Instead, he cut classes, committed forgery and was disciplined for driving recklessly on school grounds and fighting. *See id.* Additionally, he was arrested for possessing burglary tools and tampering with an automobile. *See id.* Based upon these facts, the *Springer* court ultimately refused to extend the IDEA to cover students suffering only from "bad behavior."

**9.** The New York State Education Department has the responsibility to fashion regulations consistent with the IDEA. *See* 20 U.S.C. § 1412; N.Y. Educ. Law §§ 4402–4403 (McKinney 2004).

**10.** The federal regulation defining an emotional disturbance is identical to the New York State regulation.

(A) An inability to learn that cannot be explained by intellectual, sensory, or health factors.

(B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.

(C) Inappropriate types of behavior or feelings under normal circumstances.

(D) A generally pervasive mood of unhappiness or depression.

(E) A tendency to develop physical symptoms or fears associated with personal or school problems.

*See* 34 CFR § 300.7(c)(4); N.Y. Comp. Codes R. & Regs. tit. 8 § 200.1(zz)(4).

Both officers concluded that M.S. was an emotionally-disturbed student under the regulations and, therefore, was a child with a disability under the IDEA. *See* IHO Report at 13; SRO Report at 4. The IHO found that, based upon the testimony of the CSE chairperson, the former school psychologist, and the Wappingers Falls school district psychologist, M.S. manifested symptoms of four out of the five regulatory characteristics under the IDEA. *See* IHO Report at 13–14.

In particular, the IHO and the SRO made the following findings. M.S.'s downward decline in academic performance without any intellectual, sensory or health factor present was due to an emotional disturbance. M.S. began a steady decline in academic performance after his parents' divorce in 1997. *See* SRO Report at 2. M.S. received three failing grades in the 9th grade and his overall GPA substantially declined.[11] Testing did not reveal a learning disability or other sensory or health defect. M.S. demonstrated inappropriate, defiant and disobedient behavior at home and in school that interfered substantially with his ability to build or maintain personal relationships with peers or teachers and showed signs of inappropriate behavior and feelings under normal circumstances. Additionally, both officers found that M.S. exhibited signs of a pervasive mood of unhappiness and depression. Joan Vreeland, the school psychologist, testified that M.S. was "extremely angry in school" and that he "suffered emotionally after his parents' divorce." *See* IHO Report at 8. M.S. was described as out of control and would not respond to parental direction. *See id.* M.S. did not respect curfew times and would, at times, stay out all night. *See* Plaintiff's Exhibit "19." He rarely smiled and seldom made eye contact with adults. *See id.* At home, he became verbally and physically abusive towards his brothers. *See* Deposition of Linda St. Pierre, dated March 13, 2001 ("L.S.Deposition"), at 295. Defendant had difficulty getting her son out of bed for school. *See id.* at 298. M.S. also began to socialize with a new group of friends who were involved with illegal drugs. *See* Plaintiff's Statement of Material Facts at ¶ 19. Overall, M.S. appeared angry and unhappy. He told Defendant that she could never make him happy. *See* L.S. Deposition at 294. Finally, he cut his wrists with a broken light bulb only a few weeks after arriving at the Family Foundation School. *See id.* at 316–17.

The administrative record supports the officers' findings and sufficiently shows that M.S. exhibited several of the characteristics of an emotionally-disturbed child as defined by the regulations. The Court, therefore, concludes that the officers appropriately determined that M.S. was a child with a disability under the IDEA. Accordingly, the Court denies Plaintiff's motion for summary judgment with respect to this issue.

---

11. M.S. received grades of 30 in Sequential Math, 53 in Spanish and 60 in English. *See* Plaintiff's Statement of Material Facts at

¶¶ 14, 15. His overall GPA declined from an 85.0 GPA in 8th grade to a 66.74 GPA in 10th grade. *See* IHO Report at 6.

## D. Reimbursement is proper under the IDEA

Having determined that M.S. was disabled within the meaning of the IDEA, the Court must next determine whether Plaintiff should reimburse Defendant for her expenditures relative to M.S.'s placement at the Family Foundation School for the 1999–2000 and 2000–2001 school years.

The IDEA permits a district court to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(e)(iii). Such relief includes the power to order reimbursement to parents for their expenditures on private education for their child if (1) the school district failed to provide an FAPE and (2) the private education services obtained by the parents were appropriate for the child's needs. *See Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369–70, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

### 1. Plaintiff failed to provide M.S. with an FAPE [12]

■ Under the IDEA, a disabled child is entitled to an FAPE. *See* 20 U.S.C. § 1400(d) (2000). "A free appropriate public education is one 'specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child "to benefit" from the instruction.' " *Bd. of Educ. of Murphysboro Cmty. Unit Sch. Dist. No. 186 v. Illinois State Bd. of Educ.*, 41 F.3d 1162, 1166 (7th Cir.1994) (citation omitted). To meet this standard, a district must (1) follow the procedures set forth in the IDEA and (2) develop an IEP which enables the child to receive a valuable education. *See id.* (citation omitted). Defendant alleges that Plaintiff failed to provide M.S. with an FAPE when it failed to refer him immediately to the CSE for classification after becoming aware of his problems. Furthermore, Defendant claims that Plaintiff's failure to adhere to its own procedures also contributed to Plaintiff's failure to provide an FAPE to M.S.

Plaintiff argues, at the very least, that it was under no obligation to provide M.S. with an FAPE during the 1999–2000 school year since he had not yet been classified as disabled under the IDEA. *See* Plaintiff's Memorandum of Law at 21. Moreover, Plaintiff contends that liability for the 1999–2000 school year cannot be imposed without a finding that it had violated the child-find provisions of the IDEA.[13]

The IHO and SRO found that Plaintiff failed to provide M.S. with an FAPE in a

---

**12.** Since this issue does not demand an interpretation of the statute but merely requires a review of the application of the IDEA to the officers' findings of fact, the Court is required to give due deference to the administrative findings of the IHO and SRO. *See Muller*, 145 F.3d at 102.

**13.** The "child-find" provisions of the IDEA require school districts to identify, locate and evaluate disabled children. *See* 20 U.S.C. § 1412(a)(3)(A); *Handberry v. Thompson*, 219 F.Supp.2d 525, 540 (S.D.N.Y.2002) (citations omitted). These provisions require that children be identified and evaluated within a reasonable time after school officials notice be-

havior likely to indicate a disability. *See W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir.1995) (footnote omitted). Moreover, the provisions apply not only to children with disabilities but also to children *suspected* of being disabled and in need of special education services. *See* 20 U.S.C. § 1412(a)(3)(A); 34 C.F.R. § 300.125(a)(2)(ii) (2000) (emphasis added). Thus, the "duty 'is triggered when the [state ...] has reason to suspect a disability, and reason to suspect that special education services may be needed to address that disability.' " *Dep't of Educ., State of Haw. v. Cari Rae S.*, 158 F.Supp.2d 1190, 1194 (D.Haw. 2001) (citations omitted).

timely manner for both the 1999–2000 and 2000–2001 school years. Specifically, they concluded that Plaintiff should have referred M.S. to the CSE for evaluation in September 1999, after Defendant informed Plaintiff's superintendent of schools that M.S. was experiencing emotional difficulties and the school psychologist recommended the Family Foundation School for placement. *See* SRO Report at 4–5. In addition, by failing to conduct all necessary tests, the CSE did not conform to the state education regulations. *See* N.Y.Code R. & Regs. tit. 8, § 200.4(b)(1).

Giving due deference to the factual findings of the hearing officers, the Court finds that the administrative record amply supports their conclusion that Plaintiff failed to provide M.S. with an FAPE in a timely manner. Furthermore, it is clear from the record that Plaintiff did not comply with IDEA procedures. M.S. should have been referred to the CSE for evaluation in September 1999, after Defendant informed Plaintiff that M.S. was experiencing difficulties. Plaintiff's CSE did not perform the evaluation, however, until July 2000, approximately ten months later.[14]

### 2. The Family Foundation School was an appropriate placement for M.S.[15]

Once the Court determines that a district failed to provide a disabled child with an FAPE, the next inquiry is whether the private education services that the parent obtained were appropriate in addressing the child's needs.[16]

Plaintiff argues that the Family Foundation School was simply a boarding school for students with substance abuse problems and was not an appropriate school to address emotional disturbances. *See* Plaintiff's Memorandum of Law at 18. In support of this proposition, Plaintiff asserts that the Family Foundation School offered only a closely supervised and confined environment to keep its students away from illegal substances. *See id.* Moreover, Plaintiff claims that the school did not offer any psychological or psychiatric treatment. *See id.*

In determining whether Defendant is entitled to tuition reimbursement, the Court must ensure that the parental placement was proper under the IDEA. *See Florence County Sch. Dist. Four v. Carter By and Through Carter,* 510 U.S. 7, 14, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). If the private school education meets the educational needs of the student, then the placement was proper under the Act. *See Burlington,* 471 U.S. at 370, 105 S.Ct. 1996.[17]

The administrative officers held that the Family Foundation School was an appropriate placement under the Act. They

---

**14.** Plaintiff's failure to conduct the on-site observation, as well as two other evaluations mandated by the regulations and required to produce an IEP, supports the officers' conclusions that Plaintiff did not provide M.S. with an FAPE.

**15.** This issue does not require an interpretation of the statute. It merely demands review of the application of the Act to the officers' findings of fact. Therefore, the Court gives due deference to the officers' findings. *See Muller,* 145 F.3d at 102.

**16.** Under *Burlington,* the burden of proof at the hearing stage regarding the appropriate-

ness of the private placement lies with the parent. A parent is entitled to reimbursement only if she can show that the services obtained were appropriate in addressing her child's educational needs. *See Burlington,* 471 U.S. at 370, 105 S.Ct. 1996.

**17.** Reimbursement is not barred because of the parents' unilateral placement of their child in a school that is not on the state's approved list of private schools. *See Florence County Sch. Dist.,* 510 U.S. at 14, 114 S.Ct. 361 (citation omitted).

found that the Family Foundation School's program, which offered both individualized and group therapy, a rigorous academic Regents curriculum, and peer interaction, appropriately addressed M.S.'s needs. Once again, the Court finds ample support in the administrative record for this conclusion.

In addition to providing a drug-free environment, the school offered group and individual psychological counseling and cognitive-behavioral and confrontational therapies necessary to attain social and emotional stability. *See* IHO Report at 21; SRO Report at 6. Moreover, M.S. dramatically improved in his academics, successfully passed several New York State Regents exams, and was thereafter accepted for enrollment in several colleges. *See* SRO Report at 6. M.S.'s college application essay testifies to the significant progress he made while at the Family Foundation School and is consistent with the social and emotional goals set forth in the CSE's IEP. *See id.* Additionally, the school psychologist and high school principal, well aware of M.S.'s emotional, social and academic difficulties, specifically recommended placement at the Family Foundation School.

Giving proper deference to the findings of fact regarding the appropriateness of the placement under the Act and reviewing the administrative record before it, the Court finds that the Family Foundation School was an appropriate placement under the IDEA. Accordingly, the Court denies Plaintiff's motion for summary judgment with respect to this issue and finds that Plaintiff must reimburse Defendant for tuition, room and board and laptop computer expenses incurred as a result of M.S.'s placement at the Family Foundation School for the academic years of 1999–2000 and 2000–2001.

### E. Attorneys' fees and costs

Defendant requests an award of attorneys' fees pursuant to 20 U.S.C. § 1415 (2000). Since Plaintiff has not had the opportunity to respond to this request, the Court will provide the parties with an opportunity to fully brief this issue according to the schedule set forth herein.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment is **DENIED** in its entirety and the conclusions of the IHO and SRO are upheld; and the Court further

**ORDERS** that summary judgment is **GRANTED SUA SPONTE** with respect to Defendant's counterclaim that Plaintiff reimburse Defendant for tuition, room and board and laptop computer expenses incurred as a result of M.S.'s placement at the Family Foundation School for the 1999–2000 and 2000–2001 academic years; and the Court further

**ORDERS** that Defendant shall file and serve her motion for an award of attorneys' fees, including contemporaneous time records, on or before **February 20, 2004**; and the Court further

**ORDERS** that Plaintiff shall file and serve its opposition to Defendant's motion on or before **March 9, 2004**; and the Court further

**ORDERS** that Defendant shall file and serve her reply papers, if any, on or before **March 15, 2004**; and the Court further

**ORDERS** that Defendant's motion is returnable on **March 26, 2004**, and will be taken on submit; and the Court further

ORDERS that the Clerk of the Court enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**